# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CHARLES FREDERICK PORTUS.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

CHARLES FREDERICK PORTUS,

        Respondent-Appellant.

FOR PUBLICATION
July 24, 2018
9:05 a.m.

No. 337980
Oakland Probate Court
LC No. 1976-017337-MI

---

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

BORRELLO, P.J.

Respondent, Charles Frederick Portus, appeals as of right a probate court order requiring him to remain hospitalized at the Center for Forensic Psychiatry (CFP) and denying his request to be transferred to Harbor Point Center for treatment. For the reasons set forth in this opinion, we reverse the probate court's order and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises out of the annual petition for a continuing order of involuntary mental health treatment that was filed by the CFP on October 19, 2016. In this petition, it was alleged that respondent continued to be a "person requiring treatment"[1] and that respondent was in need of continuing hospitalization for a period of one year. The probate court noted that in 1974, respondent was found not guilty by reason of insanity of the murder of a seven-year-old boy. As a result, respondent was committed to the CFP.

The probate court held a hearing regarding the CFP petition on December 9, 2016. At the hearing, respondent's attorney stipulated that respondent was a person requiring treatment but

---

[1] See MCL 330.1401 (defining "person requiring treatment" for purposes of Chapter 4 of the Mental Health Code, MCL 330.1400 *et seq.*).

challenged "the type of hospitalization" required, arguing that respondent should be transferred from the CFP to Harbor Point Center. Consistent with the parties' stipulation, the probate court entered an order requiring respondent to undergo continuing treatment and hospitalization at the CFP for a period not to exceed one year, subject to the court's later determination regarding the proper placement for respondent's treatment. The probate court scheduled an evidentiary hearing and directed the parties to submit briefs stating, among other things, their respective positions concerning "the burden of proof for placement of a person found to be in need of treatment."

Responding to this directive, petitioner argued that under the Mental Health Code, MCL 330.1001 *et seq.*, "there is no burden of proof on the petitioner to show clear and convincing evidence or a preponderance of the evidence that [respondent] should continue to be placed at the Center for Forensic Psychiatry." Petitioner further argued that the probate court should exercise its discretion in weighing respondent's "need for treatment, the safety of the public, and what is the less [sic] restrictive setting to accomplish those goals." According to petitioner, the evidentiary standard contained in MCL 330.1465, which provides that "[a] judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence," only applied to determining whether an individual was a "person requiring treatment." Petitioner argued that respondent had already been determined to be a person requiring treatment pursuant to the parties' stipulation and that the Mental Health Code did not contain any statutorily required "burden of proof" for determining an individual's placement facility.

Respondent, in contrast, argued that the evidentiary standard in MCL 330.1465 should carry through to the determination regarding the appropriate placement and form of treatment to order for a person requiring treatment. Respondent also acknowledged that, in the alternative, a preponderance-of-the-evidence standard could potentially apply to the placement determination. Respondent argued, however, that regardless of the standard of proof applied, the burden of proof should remain with petitioner to establish that the CFP was the appropriate placement for respondent.

The probate court addressed this issue at the outset of the evidentiary hearing, concluding as follows:

> [I]t's really up to the judge. There is no burden of proof with regard to the treatment. The burden of proof applies only to whether the person is mentally ill or not. That's already been stipulated to. So now it's just to see if this is the most appropriate treatment.

Following the presentation of witness testimony, exhibits, and oral argument during the evidentiary hearing, the probate court announced its findings and ruling on the record. The probate court denied respondent's request to be placed at Harbor Point Center for treatment, and it ordered that respondent would remain at the CFP "until further order of the court." An amended continuing order for mental health treatment was entered consistent with the probate court's oral ruling, which ordered respondent to be hospitalized at the CFP "until further order of the court" but up to 365 days. This appeal ensued.

## II. STANDARD OF REVIEW

This Court "reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). An abuse of discretion occurs when the probate court "chooses an outcome outside the range of reasonable and principled outcomes." *Id*. at 329 (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). We review de novo matters of statutory interpretation. *In re Guardianship of Redd*, 321 Mich App 398, 404; 909 NW2d 289 (2017). The probate court "necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

On appeal, respondent first argues that the probate court erred by ruling that there was no applicable burden of proof with respect to determining the appropriate form of treatment to order for respondent. This issue appears to be one of first impression and presents this Court with questions of statutory interpretation. "When interpreting statutes, our primary goal is to ascertain and give effect to the intent of the Legislature." *Averill v Dauterman*, 284 Mich App 18, 22; 772 NW2d 797 (2009). In doing so, we first turn to "the specific language of the statute, considering the fair and natural import of the terms employed, in view of the subject matter of the law." *Id*. We must "examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 59; 852 NW2d 103 (2014) (quotation marks and citation omitted).

Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness, including when such proceedings are instituted following a not-guilty-by-reason-of-insanity verdict, generally are referred to as "civil commitment" proceedings. See, e.g, *People v Dobben*, 440 Mich 679, 690-691; 488 NW2d 726 (1992); *People v Miller*, 440 Mich 631, 640; 489 NW2d 60 (1992); *People v Williams*, 228 Mich App 546, 556-557; 580 NW2d 438 (1998); *In re KB*, 221 Mich App 414, 417; 562 NW2d 208 (1997); *In re Baker*, 117 Mich App 591, 592-593, 595; 324 NW2d 91 (1982); *In re Wagstaff*, 93 Mich App 755, 757; 287 NW2d 339 (1979). The specific procedures for obtaining continuing orders of hospitalization or other forms of treatment based on a person's mental illness are contained in various provisions of Chapter 4 of the Mental Health Code, MCL 330.1400 *et seq*.

In the instant case, respondent's appeal stems from the CFP's petition for a continuing order of involuntary mental health treatment filed pursuant to MCL 330.1473, which provides in pertinent part that "[n]ot less than 14 days before the expiration of [a] . . . continuing order of involuntary mental health treatment issued under section 472a or section 485a, a hospital director . . . shall file a petition for a second or continuing order of involuntary mental health treatment if the hospital director or supervisor believes the individual continues to be a person requiring treatment and that the individual is likely to refuse treatment on a voluntary basis when the order expires." The filing of a petition under § 473 before the expiration of a continuing order of involuntary mental health treatment triggers MCL 330.1472a(4), which provides in relevant part as follows:

(4) Upon the receipt of a petition under section 473 before the expiration of a continuing order of involuntary mental health treatment . . . and a finding that the individual continues to be a person requiring treatment, the court shall issue another continuing order for involuntary mental health treatment as provided in subsection (3) for a period not to exceed 1 year. The court shall continue to issue consecutive 1-year continuing orders for involuntary mental health treatment under this section until a continuing order expires without a petition having been filed under section 473 or the court finds that the individual is not a person requiring treatment.

The above provision directs our attention to MCL 330.1472a(3), which lists the options for involuntary mental health treatment and imposes time limitations for such orders. Section 472a(3) provides in relevant part as follows:

(3) . . . the court shall issue a continuing order for involuntary mental health treatment that shall be limited in duration as follows:

(a) A continuing order of hospitalization shall not exceed 1 year.

(b) A continuing order of alternative treatment or assisted outpatient treatment shall not exceed 1 year.

(c) A continuing order of combined hospitalization and alternative treatment or hospitalization and assisted outpatient treatment shall not exceed 1 year. The hospitalization portion of a continuing order for combined hospitalization and alternative treatment or hospitalization and assisted outpatient treatment shall not exceed 90 days.

Furthermore, the term "involuntary mental health treatment" is statutorily defined for purposes of Chapter 4 of the Mental Health Code as "court-ordered hospitalization, alternative treatment, or combined hospitalization and alternative treatment as described in section 468." MCL 330.1400(f). MCL 330.1468(2) provides descriptions of the forms of treatment that may be ordered upon a finding that an individual is a person requiring treatment, and these descriptions correspond to the forms of treatment referenced in MCL 330.1472a(3). Section 468(2) provides in relevant part as follows:

(2) . . . if an individual is found to be a person requiring treatment, the court shall do 1 of the following:

(a) Order the individual hospitalized in a hospital recommended by the community mental health services program or other entity as designated by the department.

(b) Order the individual hospitalized in a private or veterans administration hospital at the request of the individual or his or her family, if private or federal funds are to be utilized and if the hospital agrees. . . .

(c) Order the individual to undergo a program of treatment that is an alternative to hospitalization and that is recommended by the community mental health services program or other entity as designated by the department.

(d) Order the individual to undergo a program of combined hospitalization and alternative treatment or hospitalization and assisted outpatient treatment, as recommended by the community mental health services program or other entity as designated by the department.

(e) Order the individual to receive assisted outpatient treatment through a community mental health services program, or other entity as designated by the department, capable of providing the necessary treatment and services to assist the individual to live and function in the community as specified in the order. . . .

In accordance with the above statutory framework, the issuance of a continuing order for involuntary mental health treatment essentially requires the probate court to follow a two-step process. First, the probate court must find "that the individual continues to be a person requiring treatment." MCL 330.1472a(4). "A judge or jury shall not find *that an individual is a person requiring treatment* unless that fact has been established by *clear and convincing evidence*." MCL 330.1465 (emphasis added). The relevant statutory definition of a "person requiring treatment" is contained in MCL 330.1401.[2] In this case, respondent conceded that he was a "person requiring treatment," hence, the first step is not at issue.

---

[2] MCL 330.1401 provides as follows:

(1) As used in this chapter, "person requiring treatment" means (a), (b), (c), or (d):

(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness that he or she is unable to understand his or her need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to the individual in the near future or presents a substantial risk of physical harm to others in the near future.

Second, after the probate court finds that an individual is a person requiring treatment, the probate court "shall issue another continuing order for involuntary mental health treatment as provided in subsection (3) for a period not to exceed 1 year." MCL 330.1472a(4). Both § 472a(3) and § 468(2), which is incorporated by reference to the statutory definition of "involuntary mental health treatment," describe the potential treatment options: hospitalization, alternative treatment, assisted outpatient treatment, a combination of hospitalization and alternative treatment, or a combination of hospitalization and assisted outpatient treatment. In determining which treatment option to order, there is statutory guidance for a probate court in MCL 330.1469a,[3] which provides in relevant part as follows:

(1) Except for a petition filed as described under section 434(6),[4] before ordering a course of treatment for an individual found to be a person requiring treatment, the court shall review a report on alternatives to hospitalization that was prepared under section 453a not more than 15 days before the court issues the order. After reviewing the report, the court shall do all of the following:

(a) Determine whether a treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization is adequate to

(d) An individual who has mental illness, whose understanding of the need for treatment is impaired to the point that he or she is unlikely to voluntarily participate in or adhere to treatment that has been determined necessary to prevent a relapse or harmful deterioration of his or her condition, and whose noncompliance with treatment has been a factor in the individual's placement in a psychiatric hospital, prison, or jail at least 2 times within the last 48 months or whose noncompliance with treatment has been a factor in the individual's committing 1 or more acts, attempts, or threats of serious violent behavior within the last 48 months. An individual under this subdivision is only eligible to receive assisted outpatient treatment.

(2) An individual whose mental processes have been weakened or impaired by a dementia, an individual with a primary diagnosis of epilepsy, or an individual with alcoholism or other drug dependence is not a person requiring treatment under this chapter unless the individual also meets the criteria specified in subsection (1). An individual described in this subsection may be hospitalized under the informal or formal voluntary hospitalization provisions of this chapter if he or she is considered clinically suitable for hospitalization by the hospital director.

[3] MCL 330.1468(3) also directs the probate court to consider certain factors in "developing an assisted outpatient treatment order." However, this provision is not implicated in the instant appeal because there was no attempt to seek assisted outpatient treatment for respondent.

[4] This exception is not implicated by the issues raised in this appeal because the instant matter involves a petition filed under MCL 330.1473 rather than a petition filed under MCL 330.1434.

meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future.

> (b) Determine whether there is an agency or mental health professional available to supervise the individual's alternative treatment program.

> (c) Inquire as to the individual's desires regarding alternatives to hospitalization.

> (2) *If the court determines that there is a treatment program that is an alternative to hospitalization that is adequate to meet the individual's treatment needs and prevent harm that the individual may inflict upon himself or herself or upon others within the near future and that an agency or mental health professional is available to supervise the program, the court shall issue an order for alternative treatment or combined hospitalization and alternative treatment in accordance with section 472a.* The order shall state the community mental health services program or, if private arrangements have been made for the reimbursement of mental health treatment services in an alternative setting, the name of the mental health agency or professional that is directed to supervise the individual's alternative treatment program. The order may provide that if an individual refuses to comply with a psychiatrist's order to return to the hospital, a peace officer shall take the individual into protective custody and transport the individual to the hospital selected. [Emphasis added.]

With respect to the report referenced above, MCL 330.1453a provides in pertinent part as follows:

> [T]he court shall order a report assessing the current availability and appropriateness for the individual of alternatives to hospitalization, including alternatives available following an initial period of court-ordered hospitalization. The report shall be prepared by the community mental health services program, a public or private agency, or another individual found suitable by the court. In deciding which individual or agency should be ordered to prepare the report, the court shall give preference to an agency or individual familiar with the treatment resources in the individual's home community.

Additionally, two more statutes are relevant to our consideration of respondent's first issue on appeal. First, MCL 330.1470 provides as follows:

> Prior to ordering the hospitalization of an individual, the court shall inquire into the adequacy of treatment to be provided to the individual by the hospital. Hospitalization shall not be ordered unless the hospital in which the individual is to be hospitalized can provide him with treatment which is adequate and appropriate to his condition.

Next, MCL 330.1460 provides as follows:

-7-

Counsel for the subject of a petition shall be allowed adequate time for investigation of the matters at issue and for preparation, and shall be permitted to present the evidence that counsel believes necessary to a proper disposition of the proceedings, including evidence as to alternatives to hospitalization.

As noted, the statutory framework as set forth above, does not explicitly specify an evidentiary standard or burden of proof that is applicable to the probate court's findings during this second phase of the process. Agreeing with petitioner, the probate court ruled that the absence of an evidentiary standard or burden of proof meant that none need be employed. Respondent argued in the probate court and here that, at a minimum, the default standard in civil cases—preponderance of the evidence—applies to the probate court's determination of the form of treatment to order.

As an initial matter, it is necessary for this Court to clarify that although both the parties and the probate court below generally framed the issue in terms of the required "burden of proof," there are actually two distinct, but related, concepts at play here: the *burden* of proof and the *standard* of proof.

Typically, the term "burden of proof" refers to "[a] party's duty to prove a disputed assertion or charge" or "a proposition regarding which of two contending litigants loses when there is no evidence on a question or when the answer is simply too difficult to find." *Black's Law Dictionary* (10th ed). "The burden of proof includes both the *burden of persuasion* and the *burden of production*." *Id*. Hence, "[i]n its strict sense the term 'burden of proof' refers to the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a case," and a "secondary use of the term . . . denotes the burden of going forward, i.e., the obligation to respond to a prima facie case established by the opposing party." *Palenkas v Beaumont Hosp*, 432 Mich 527, 550; 443 NW2d 354 (1989) (opinion by ARCHER, J.); see also *id*. at 530 (opinion of the Court).[5] By contrast, the term "standard of proof" has been defined as follows: "[t]he degree or level of proof demanded in a specific case, such as 'beyond a reasonable doubt' or 'by a preponderance of the evidence'; a rule about the quality of the evidence that a party must bring forward to prevail." *Black's Law Dictionary* (10th ed). Thus, although the parties and the probate court focused on whether there was an applicable "burden" of proof, we first must ascertain the requisite quantum of proof, i.e. the *standard* of proof, on which a probate court must base its decision regarding the form of treatment and placement to order for an individual found to be a person requiring treatment.

In discerning the applicable standard of proof, we begin by noting that the relevant statutes make clear that the probate court does not have unfettered discretion to choose a form of treatment and placement for an individual found to be a person requiring treatment. The probate court is required to order the preparation of a report on the availability and appropriateness of alternatives to hospitalization for the individual and, after reviewing that report, make particular determinations related to potential alternatives to hospitalization. MCL 330.1453a; MCL

---

[5] The majority concurred in the part of the opinion by Justice ARCHER from which we have quoted. *Palenkas*, 432 Mich at 530 (opinion of the Court).

330.1469a(1). Specifically, the probate court must determine (1) whether an alternative treatment program is "adequate to meet the individual's treatment needs"; (2) whether an alternative treatment program is "sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future"; and (3) whether an agency or mental health professional is "available to supervise the individual's alternative treatment program." MCL 330.1469a(1)(a) and (b). The probate court must also inquire about the "individual's desires regarding alternatives to hospitalization." MCL 330.1469a(1)(c). If the probate court finds that the requirements in MCL 330.1469a(1)(a) and (b) are met with respect to a treatment program that is in alternative to hospitalization, then "the court *shall* issue an order for alternative treatment or combined hospitalization and alternative treatment in accordance with section 472a." MCL 330.1469a(2) (emphasis added).

Our Supreme Court has explained that "courts should give the ordinary and accepted meaning to the mandatory word 'shall' . . . unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). There is no indication that "shall" was not meant to be given its usual mandatory meaning in MCL 330.1469a(2), and the Legislature therefore gave the probate court a mandatory directive to order some form of alternative treatment when that form of treatment satisfies the standards set forth in MCL 330.1469a(1)(a) and (b). See *Browder*, 413 Mich at 612. Accordingly, if the probate court determines that there is an adequate form of alternative treatment that satisfies the standards in MCL 330.1469a(1)(a) and (b), then the probate court does not have the discretion to order hospitalization as the sole form of treatment. Although we recognize that in those circumstances the probate court may have some degree of discretion to determine the nature of alternative treatment to order or how to structure a combination of hospitalization and alternative treatment, any discretion held by the probate court is certainly not without limit. "[T]his mandatory directive indicates that a standard giving significant discretion to the probate court is not the correct one to use here." *Redd*, 321 Mich App at 409.

Next, given that the probate court is statutorily required to make specific determinations before ordering a course of treatment, a court cannot make these determinations in a vacuum or without referring to evidence. The probate court in this case, despite ruling that there was no applicable burden of proof, clearly understood that its decision was based on evidence: it held an evidentiary hearing where it heard witness testimony and admitted exhibits. The probate court considered a report on alternatives to hospitalization, and it explained during the course of its oral ruling that it was considering the record evidence. However, the question becomes one regarding the necessary *strength or persuasiveness* of that evidence required to justify the probate court's ultimate factual findings. In other words, there must be a "standard of proof" because without one, a probate court could conceivably justify a factual finding based on "some" or even a "scintilla" of evidence.

As we have previously indicated, although the Legislature provided that clear and convincing evidence is the required standard of proof for the initial finding that an individual is a "person requiring treatment," MCL 330.1465, there is no standard of proof provided in MCL 330.1469a regarding the probate court's findings on the adequacy and suitability of alternative treatments to hospitalization. "We must construe this omission of a provision in one statute that is included in another statute . . . as intentional." *Redd*, 321 Mich App at 408 (quotation marks

and citation omitted; ellipsis in original). We therefore conclude that the clear-and-convincing-evidence standard in MCL 330.1465 does not apply to the determination regarding the individual's appropriate form of treatment and placement. "When a statute fails to state the standard that probate courts are to use to establish a particular fact, the default standard in civil cases—preponderance of the evidence—applies." *Id*. at 409; see also *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 522; 857 NW2d 529 (2014) ("Further, because the statute does not state the quantum of proof necessary . . ., the default standard in civil cases, the preponderance of the evidence, applies."). There is no indication in MCL 330.1469a that some standard of proof other than the default preponderance-of-the-evidence standard should apply and, as we have discussed, some standard of proof is necessary to substantiate a probate court's determinations regarding the appropriate treatment and placement to order. Therefore, we hold that MCL 330.1469a requires that a preponderance of the evidence support the probate court's findings with respect to its determinations regarding an individual's treatment and placement.

Having ascertained the standard of proof required by the statute, we next turn to addressing the allocation of the burden of proof. Again, the statute is silent on this point. Generally, the party who is the proponent of a given position bears the burden of establishing the facts to support that position. *Blackburn*, 306 Mich App at 521. "The party alleging a fact to be true should suffer the consequences of a failure to prove the truth of that allegation." *Kar v Hogan*, 399 Mich 529, 539; 251 NW2d 77 (1976), not followed on other grounds by *In re Estate of Karmey*, 468 Mich 68, 69, 73-74; 658 NW2d 796 (2003). In accordance with this principle, we hold that the proponent of a particular form of treatment or placement at a specific facility for an individual who has been found to be a person requiring treatment bears the burden of proving by a preponderance of the evidence the facts necessary to persuade the probate court to enter such an order and for the probate court to be legally justified in entering such an order pursuant to the statutory requirements in Chapter 4 of the Mental Health Code that we have previously discussed.[6]

---

[6] We note that respondent expressly argued for application of the preponderance-of-the-evidence standard and, understandably, has not argued that applying this standard to the probate court's treatment determination would violate his right to due process. Accordingly, we express no opinion on that issue.

As previously stated, the involuntary hospitalization proceedings at issue in this case are civil proceedings. In reaching this conclusion, we draw guidance from our Supreme Court. Our Supreme Court considers these types of proceedings, through which an individual is involuntarily hospitalized after being found not guilty by reason of insanity of a crime, to be civil in nature. See *Dobben*, 440 Mich at 691 (discussing the CFP's responsibility for "evaluat[ing] and fil[ing] reports where civil commitment is sought subsequent to a finding of not guilty by reason of insanity"); *People v Webb*, 458 Mich 265, 281; 580 NW2d 884 (1998) (explaining that MCL 330.2050, which contains procedures for involuntarily committing persons acquitted of a criminal charge by reason of insanity, is a statute designed to "promote public safety" and "establish[] a procedure for determining whether a person acquitted by reason of insanity can safely be returned to society" because "[p]ersons acquitted by reason of insanity, particularly

Petitioner, in arguing that there is no burden or standard of proof applicable to the probate court's treatment determination, compares the probate court's decision regarding the appropriate form of treatment to a trial court's discretionary sentencing decision in criminal proceedings. Petitioner relies on *In re Portus*, 142 Mich App 799, 803; 371 NW2d 871 (1985), in which this Court held that there was no requirement that a jury determine the appropriate treatment for an individual although the question whether that individual continued to require treatment was submitted to the jury pursuant to MCL 330.1458.[7] We reasoned that the circumstances of involuntary commitment were "analogous to the criminal setting, where the jury determines the guilt and then the trial judge decides the sentence." *Portus*, 142 Mich App at 803. But petitioner's reliance is misplaced because we made the comparison in *Portus* for the sole purpose of rationalizing why an individual is entitled to a jury determination regarding whether he continues to require treatment while not being entitled to a jury determination of the appropriate form of treatment. We did not state that a judge's determination of the appropriate form of treatment is not subject to any standards for supporting that determination.

Moreover, a trial court's sentencing discretion in the criminal context is also not unlimited. For example, although a sentencing court may exercise its discretion to impose a sentence that represents a departure from the applicable guidelines range without articulating a substantial and compelling reason, the sentence is still reviewable by an appellate court for

---

where the facts are grave, cannot be allowed simply to walk out the front door of the courthouse"). Most importantly, our Supreme Court in *People v McQuillan*, 392 Mich 511, 546-547; 221 NW2d 569 (1974), held that upon completion of a "period of temporary statutory detention" for purposes of examination and observation, "due process and equal protection require that a defendant found not guilty by reason of insanity must have the benefit of commitment and release provisions equal to those available to those civilly committed."

Our Michigan standard, which is now reflected in MCL 330.2050, appears to provide more than the minimum constitutional due process protection to which a person in respondent's circumstances is entitled under United States Supreme Court precedent. In *Jones v United States*, 463 US 354, 366-370; 103 S Ct 3043; 77 L Ed 2d 694 (1983), the Court held that under the Due Process Clause, "when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." The *Jones* Court explained that in such a case, the initial commitment could be based on the not-guilty-by-reason-of-insanity verdict alone without conducting an additional civil commitment hearing. *Id*. at 366.

[7] MCL 330.1458 currently provides, as it did at the time that *Portus* was decided:

> The subject of a petition may demand that the question of whether he requires treatment or is legally incompetent be heard by a jury. A jury shall consist of 6 persons to be chosen in the same manner as jurors in civil proceedings.

"reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, an appellate court determines whether the sentencing court abused its discretion by violating the "principle of proportionality," which requires sentences to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). A sentencing court is still obligated to take the legislative sentencing guidelines into account when sentencing, *id*. at 474-475, and the trial court's factual determinations under the sentencing guidelines must be supported by a preponderance of the evidence, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Thus, there is simply no merit in any comparison to criminal sentencing as support for the conclusion that no standard of proof is required to support the probate court's treatment determination.

In sum, the probate court erred by ruling that there was no applicable burden of proof to its treatment determination and issuing its treatment order without tying it to any evidentiary standard.

We cannot conclude that this error was harmless. A lower court's error "is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). An error is harmless if it did not affect the outcome of the proceeding. *In re Sprint Communications Co, LP, Complaint*, 234 Mich App 22, 42; 592 NW2d 825 (1999).

In this case, because the probate court believed that there was no applicable burden or standard of proof and made its findings and conclusions while operating under that belief, we cannot ascertain on what basis the probate court made its findings. Therefore, the probate court's error was not harmless. *Id*. Moreover, we "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017) (quotation marks and citation omitted). Additionally, when a trial court fails to apply the proper legal standards, normally the appropriate appellate remedy is to remand to that trial court for application of the proper legal standards. See, *People v Barritt*, 501 Mich 872; 901 NW2d 859 (2017).

Respondent also raises three other distinct claims of error on appeal that we must address in order to provide guidance to the probate court on remand.

First, respondent argues that the probate court erred by indicating that after determining respondent was a person requiring treatment, the probate court would look to MCL 330.1468(2) to determine the type of treatment to order. Respondent maintains, and petitioner agrees on appeal, that MCL 330.1468(2) applies only to petitions filed under MCL 330.1434 and that § 468(2) is therefore inapplicable in the instant case because the subject petition was filed pursuant to MCL 330.1473 rather than MCL 330.1434.

The parties are incorrect. Admittedly, MCL 330.1468(2), which we have previously set forth more completely, begins as follows: "For a petition filed *under section 434*, if an individual is found to be a person requiring treatment, the court shall do 1 of the following . . . ." (Emphasis added.) As we have already explained, a petition filed under MCL 330.1473 before the expiration of a continuing order triggers MCL 330.1472a(4), which provides that once such a petition has been received and an individual has been found to be a person requiring treatment, "the court shall issue another continuing order for *involuntary mental health treatment* as provided in subsection (3) for a period not to exceed 1 year." However, the term "involuntary mental health treatment" is statutorily defined to mean "court-ordered hospitalization, alternative treatment, or combined hospitalization and alternative treatment *as described in section 468*." MCL 330.1400(f) (emphasis added). Thus, the probate court was specifically directed to look to MCL 330.1468, which sets forth these potential treatment options, and the probate court did not err by referring to this statute.[8]

Next, respondent argues that the probate court erred by concluding that Harbor Point was not a "hospital." With respect to its determination on this point, the probate court stated as follows during the course of announcing its final ruling from the bench:

> [T]he court rejects the stipulation of the prosecutor to the characterization of Harbor Point Center as a hospital, because one, it is not a hospital, it is a direct community placement pursuant to the October 13th, 2016 letter of Joseph Corso of the Center for Forensic Psychiatry.

For purposes of the Mental Health Code, the terms "hospital" and "psychiatric hospital" are both defined as "an inpatient program operated by the department for the treatment of individuals with serious mental illness or serious emotional disturbance or a psychiatric hospital or psychiatric unit licensed under section 137." MCL 330.1100b(7); MCL 330.1100 (stating that the definitions in §§ 100a to 100d apply to the Mental Health Code unless otherwise required by the context). A "psychiatric unit" is "a unit of a general hospital that provides inpatient services for individuals with serious mental illness or serious emotional disturbance," and as used in this definition, " 'general hospital' means a hospital as defined in section 20106 of the public health code, 1978 PA 368, MCL 333.20106."[9] MCL 330.1100c(8). " 'Department' means the

---

[8] We acknowledge that relevant portion of MCL 330.1468(2) at issue—"For a petition filed under section 434"—was the result of an amendment that took effect on February 14, 2017, shortly before the evidentiary hearing in this matter. 2016 PA 320. However, this change to the statute does not negate the fact that the forms of treatment described in MCL 330.1468(2) are still expressly incorporated into MCL 330.1472a(4) through the statutory definition of "involuntary mental health treatment" contained in MCL 330.1400(f).

[9] MCL 333.20106(5) has recently been amended, but the changes are not substantive. 2017 PA 167. MCL 333.20106(5) currently provides as follows:

> "Hospital" means a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction

-13-

department of health and human services." MCL 330.1100a(21). " 'Hospitalization' or 'hospitalize' means to provide treatment for an individual as an inpatient in a hospital." MCL 330.1100b(9).

We cannot find where the probate court applied these statutory definitions in determining whether Harbor Point was a "hospital" for purposes of the Mental Health Code. Should this issue arise on remand, the probate court must determine whether the evidence establishes that Harbor Point meets the statutory definition of "hospital" for purposes of the Mental Health Code, as that affects whether placement at Harbor Point is actually "an *alternative to* hospitalization" or "*alternative* treatment" under MCL 330.1468(2) and MCL 330.1469a(1) and (2). (Emphasis added.) It is also important to make proper a determination whether a given facility—Harbor Point in this case—is a "hospital" because under MCL 330.1471, "[p]reference between the department designated hospital and other available hospitals shall be given to the hospital which is located nearest to the individual's residence except when the individual requests otherwise or there are other compelling reasons for an order reversing the preference."

Lastly, respondent argues that the probate court's order that respondent would remain at the CFP "until further order of the court" was contrary to certain statutory provisions in the Mental Health Code that pertain to the release of patients, specifically MCL 330.2050(5) and MCL 330.1476 to MCL 330.1479.

MCL 330.2050(5) provides as follows:

> The release provisions of sections 476 to 479 of this act shall apply to a person found to have committed a crime by a court or jury, but who is acquitted by reason of insanity, except that a person shall not be discharged or placed on leave without first being evaluated and recommended for discharge or leave by the department's program for forensic psychiatry, and authorized leave or absence from the hospital may be extended for a period of 5 years.

Thus, MCL 330.2050(5) expressly incorporates the release provisions found in MCL 330.1476 to MCL 330.1479. Of those provisions, the only one that is applicable to respondent at this juncture is MCL 330.1476, which provides in relevant part:

> (2) The hospital director shall discharge a patient hospitalized by court order when the patient's mental condition is such that he or she no longer meets the criteria of a person requiring treatment.

> (3) If a patient discharged under subsection (1) or (2) has been hospitalized by court order, or if court proceedings are pending, the court shall be notified of the discharge by the hospital.

---

or supervision of a physician. Hospital does not include a mental health hospital licensed or operated by the department of health and human services or a hospital operated by the department of corrections.

-14-

" 'Discharge' means an absolute, unconditional release of an individual from a facility by action of the facility or a court." MCL 330.1100a(27). " 'Hospital director' means the chief administrative officer of a hospital or his or her designee." MCL 330.1100b(8).

The above statutes provide a procedural mechanism for discharging an individual who "no longer meets the criteria of a person requiring treatment," without requiring a court order sanctioning the discharge. MCL 330.1100a(27); MCL 330.1100b(8); MCL 330.1476(2); MCL 330.2050(5). Therefore, the probate court erred by ordering respondent to remain at the CFP "until further order of the court." This language is contrary to MCL 330.1476(2) and MCL 330.2050(5) despite the fact that the probate court's order otherwise complied with the time limitation in MCL 330.1472a(3)(a) by indicating that respondent would be hospitalized for up to 365 days.

On remand, if the probate court determines that respondent must remain hospitalized at the CFP, the probate court shall not include language ordering respondent to remain "until further order of the court." See *People v Carson*, 169 Mich App 343, 344, 346-347; 425 NW2d 548 (1988) (holding that circuit court's order was contrary to law where the order restrained the CFP from discharging an individual who had been acquitted by reason of insanity until after a petition had been filed in the circuit court and the individual had been found not to require treatment pursuant to a hearing on the matter).

IV. CONCLUSION

Under the provisions of the Mental Health Code applicable to obtaining continuing orders of involuntary mental health treatment, a probate court's treatment determination must be supported by a preponderance of the evidence. Because the probate court did not apply this standard and instead determined that no evidentiary standard applied, it erred. On remand, the probate court must resolve conflicts in the evidence and make the necessary factual findings under the preponderance-of-the-evidence standard of proof with each party retaining the burden of persuasion with respect to the placement and form of treatment each seeks.

Reversed and remanded. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

-15-