*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ALW.

LANCE WORKMAN,

UNPUBLISHED
July 1, 2021

Petitioner-Appellee,

v

No. 355586
Mecosta Probate Court

ALW,

LC No. 20-002013-MI

Respondent-Appellant.

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the probate court's order for involuntary mental health treatment.[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent's father filed a petition for mental health treatment, alleging that respondent had a "dual personality" and believed she needed to be "killed by suicide via a person named 'Karl' in Chicago." The petition also alleged that respondent "talks to someone not there." The day before, a physician examined respondent and diagnosed her with "Brief Psychotic Disorder." The next day, Dr. Puneet Singla, a licensed psychiatrist, examined respondent and diagnosed her with "Bipolar Disorder, I, Manic with Psychosis." Both doctors stated that respondent reported she wanted to go to Chicago to have assisted suicide through "death soleil."

At the hearing on the petition for mental health treatment, Dr. Singla testified that respondent told him she needed to find a river because that is where the procedure was performed.

---

[1] In light of the sensitive nature of the discussion of respondent's health information, we do not identify her by name.

Dr. Singla testified that respondent believed she would "go the other side" after the procedure was performed and that someone named "Adona" "talks to her and tells her about this." Dr. Singla testified that although he spoke with respondent about why he believed it was important for her to take antipsychotic medication, respondent believed she only needed medication to help her sleep. Dr. Singla did not believe the sleep medication was helping respondent.

Respondent testified that "Adona" was "the one from seven wonders," spoke to her "through this hole on the other side of the conscious," and told her to "refer to suicide." Respondent testified that she believed she was already dead and that Chicago was "where people go to render themselves over." Respondent testified that she only needed "sleeping pills."

At the conclusion of the hearing, the probate court found that clear and convincing evidence demonstrated that respondent was a person requiring treatment under MCL 330.1401(1)(a), (1)(b), and (1)(c). The court ordered that respondent undergo mental health treatment for up to 180 days, with up to 60 days of hospitalization. This appeal followed.

## II.    ANALYSIS

Respondent argues that the probate court erred by finding that there was clear and convincing evidence she was a "person requiring treatment" under MCL 330.1401(1). We disagree.

We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying a probate court's decision. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted).

Before a probate court may order an individual to receive involuntary mental health treatment, it must find that the individual is a "person requiring treatment" under MCL 330.1401(1). MCL 330.1401(1) provides:

As used in this chapter, "person requiring treatment" means (a), (b), or (c):

(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

" 'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). "A judge . . . shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465.

On appeal, respondent does not dispute that she has a mental illness. Rather, she contends that clear and convincing evidence was not presented to establish that she was a person requiring treatment under MCL 330.1401(a) on the basis that she did not have a "suicide plan." Dr. Singla testified that respondent expressed an interest in going to Chicago to "die." "She reported that she's trying to get to death soleil, that she –that it's a suicide way out of soul." She told Dr. Singla that she was trying to get somewhere in Chicago to a person called "Card"[2] who she "believes will perform this procedure on her, in which she will die, and her death will go to the other side." She also believed that they are doing this procedure in the basement of a local hospital and that "she has to die." She believed that she was already dead, and that her soul had to be rendered through this procedure. Respondent correctly notes in her appellate brief that she testified at the hearing that she believed someone in Chicago would perform the procedure and that she was already dead. Respondent also testified that she wanted to go to Chicago to "render [herself] over" and that "Adona" told her to "[r]efer to suicide." She also discussed "deceasement" and "mercination at the end." The trial court did not clearly err in finding that as a result of her mental illness, respondent had a suicide plan, although she described it as rendering herself over, and that there was clear and convincing evidence to establish that it could reasonably be expected within the near future that she could "intentionally or unintentionally seriously physically injure . . . herself" and that she "made significant threats that are substantially supportive of the expectation."[3] MCL 330.1401(1)(a).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

---

[2] Although the hearing transcript identifies the person as "Card," this presumably refers to the person identified as "Karl" in the petition.

[3] Because an individual need only qualify as a person requiring treatment under one clause of MCL 330.1401(1), we need not address respondent's arguments with respect to the probate court's findings under MCL 330.1401(1)(b) and (c).