*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* KH.

---

NIRAN HAMAMA, NIBROUS ABBOUD, and
RAYMOND HAMAMA,

        Petitioners-Appellees,

v

KH,

        Respondent-Appellant.

UNPUBLISHED
December 11, 2025
12:27 PM

No. 373543
Oakland Probate Court
LC No. 2005-041081-MI

---

*In re* KH.

---

NIRAN HAMAMA, NIBROUS ABBOUD, and
RAYMOND HAMAMA,

        Petitioners-Appellees,

v

KH,

        Respondent-Appellant.

No. 374600
Oakland Probate Court
LC No. 2005-041081-MI

---

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

-1-

These consolidated appeals[1] arise under the Mental Health Code, MCL 330.1001 *et seq.* In Docket No. 373543, respondent appeals by right the trial court's order denying her petition for a protective order preventing petitioners from filing additional petitions for mental health treatment. In Docket No. 374600, respondent appeals by right the court's order that respondent be transported and examined for a mental health assessment. For the following reasons, we affirm the court's order denying respondent's request for a protective order but reverse the court's order for examination and transport.

## I. BASIC FACTS AND PROCEDURAL HISTORY

While respondent's involvement with these proceedings as a person requiring treatment under the Mental Health Code dates back to 2005, the proceedings relevant to this appeal relate to filings and hearings that occurred in 2024 and 2025. On May 28, 2024, respondent's husband, petitioner Nibrous Abboud, filed a petition seeking mental health treatment for respondent. Up to this point, Abboud's petition was the eighth petition filed by her family or other interested parties seeking examination and transport—and eventually hospitalization—for mental health treatment. Although respondent eventually stipulated to a period of inpatient and outpatient treatment in response to Abboud's filing, she subsequently filed a petition for protective order in which she stated that she was unable to manage her affairs effectively because of "[c]onsistently being wrongfully petitioned for mental health treatment." The trial court denied the request.

Respondent's mother, petitioner Niran Hamama, filed another petition for examination and transport on February 10, 2025, in which she alleged that respondent was a person requiring treatment because respondent was "hearing voices, talking to herself aloud, make [sic] fight a lot[,] say inappropriate word [sic][,] bad behavior."[2] Niran averred that she made reasonable efforts to secure examination of respondent before filing the petition with a one word response: "Refused."

At the hearing held the same day to determine whether to approve the petition, Niran explained to the court that respondent "fight[s] with me, with her sister. She hit her sister. She fight[s] with her husband, like every day. She behave very bad." Approving the petition, the court explained that "there is a concern that [respondent] could, at a minimum, put herself in harms [sic] way." The court expressed that if respondent was "responding to internal stimuli and someone misperceives her intention and actions as threatening," respondent could harm someone. Niran responded to the court's finding, however, that respondent was "not a harm, she's not danger, but—but—like—like she talk to herself." The court nevertheless approved the petition, and this appeal followed.

---

[1] *In re KH*, unpublished order of the Court of Appeals, entered March 19, 2025 (Docket Nos. 373543 and 374600).

[2] Because subsequent petitions involving respondent were filed in 2025, we clarify that the 2025 petition at issue in the present case, is the February 10, 2025 petition.

## II. PERSON REQUIRING TREATMENT

On appeal, respondent raises various challenges to the court's approval of the February 10, 2025 petition. Respondent contends that there was insufficient evidence that respondent was a person requiring treatment because there was insufficient evidence she was a danger to herself or others. Respondent also contends that the court abused its discretion when it approved the petition because Niran failed to support her statement that she made reasonable efforts to secure respondent's examination. For the following reasons, we agree.

## A. STANDARDS OF REVIEW

This Court reviews de novo matters of statutory interpretation. *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019). However, "[t]his Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness . . . generally are referred to as 'civil commitment' proceedings." *In re Portus*, 325 Mich App at 382. "The specific procedures for obtaining continuing orders of hospitalization or other forms of treatment based on a person's mental illness are contained in various provisions of . . . the Mental Health Code, MCL 330.1400 *et seq*." *Id*.

"Any individual 18 years of age or over may file with the court a petition that asserts that an individual is a person requiring treatment." MCL 330.1434(1). "The petition shall contain the facts that are the basis for the assertion, the names and addresses, if known, of any witnesses to the facts, and, if known, the name and address of the nearest relative or guardian, or, if none, a friend, if known, of the individual." MCL 330.1434(2). A "person requiring treatment" is statutorily defined as:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation[;]
>
> (b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs[; or]

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others. [MCL 330.1401(1).]

" 'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). "A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465.

Generally, the petition must be accompanied by a clinical certificate "unless after reasonable effort the petitioner could not secure an examination." MCL 330.1434(3). "If the petition is not accompanied by a clinical certificate, and if the court is satisfied a reasonable effort was made to secure an examination, the court shall order the individual to be examined by a psychiatrist and either a physician or a licensed psychologist." MCL 330.1435(2). Thus,

[i]f it appears to the court that the individual requires immediate assessment because the individual presents a substantial risk of significant physical or mental harm to themself in the near future or presents a substantial risk of significant physical harm to others in the near future, the court may order the individual hospitalized and may order a peace officer to take the individual into protective custody and transport the individual to a preadmission screening unit designated by the community mental health services program. [MCL 330.1438.]

In contrast with proceedings in which the petition is seeking the involuntary hospitalization of the respondent, it is typical that during proceedings for examination and transport, "the respondent ordinarily has no idea that such a process is underway . . . ." *In re MAT*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 4. For this reason and others, "[t]he Michigan Supreme Court has held that civil-commitment statutes must be strictly complied with." *In re Jestila*, 345 Mich App 353, 358; 5 NW3d 362 (2023). "The [Mental Health] Code's procedural safeguards are not mere technicalities. Rather, they are essential tools to safeguard the liberty interests of respondents in mental health cases." *Id*. at 359 (quotation marks and citation omitted).

Respondent first contends that the court abused its discretion when it approved the petition because there were no facts in the petition or elucidated at the hearing that respondent posed a substantial risk of harm to herself or others. More properly phrased, respondent's argument is that the court's finding that respondent *did* pose such a risk of harm was clearly erroneous. We agree.

Again, in the written petition, Niran alleged that respondent was a person requiring treatment because respondent "was "hearing voices, talking to herself aloud, make [sic] fight a lot[,] say inappropriate word [sic][,] bad behavior." In addition, during the hearing, Niran explained to the court: "Like she fight[s] with me, with her sister. She hit her sister. She fight[s] with her husband, like every day. She behave very bad." When the court expressed its opinion,

-4-

however, that respondent posed a risk of harm to herself because she may respond to her internal stimuli in a manner perceived by others as threatening, Niran responded that respondent was "not a harm, she's not danger, but—but—like—like she talk to herself."

Although Niran stated that she did not believe respondent was a "danger," the trial court did not inquire further into what Niran meant. On the one hand, Niran stated that respondent fought with her family, including hitting her sister. It may been reasonable for the trial court to conclude, on the basis of those statements, that respondent was a person requiring treatment because it evidenced that respondent could "reasonably be expected within the near future to intentionally or unintentionally seriously physically injure [herself] and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation." MCL 330.1401(1)(a). But the court did not examine the circumstances under which respondent purportedly hit her sister and whether it was related to respondent's mental health issues. Once Niran injected additional doubt into that finding by stating that respondent was not a danger and did not pose any harm, the trial court should have inquired further. On the basis of this record, and in light of the rule that the Mental Health Code's requirements are not "mere technicalities," but rather require strict compliance, *In re Jestila*, 345 Mich App at 359, the trial court clearly erred when it found that respondent was a person requiring treatment.

The same is true regarding the trial court's finding that reasonable efforts were made to secure respondent's examination. In the trial court, Niran wrote in the petition the word "Refused" in response to the question why an examination could not be secured. See MCL 330.1434(3). At the hearing, petitioner claimed that respondent "refused to go to the doctor at all," that respondent said "don't take me to the doctor," and that respondent's husband had offered to take her to "the best doctor." But the court did not follow up by asking any further questions about what reasonable efforts had been made to secure the examination. Viewed in the best light, respondent's alleged refusal to see a doctor refers to respondent's lack of *desire* to be examined. But there are no supporting facts—in the petition or from the hearing—regarding what reasonable efforts Niran undertook to secure the examination, or even any indication as to when the above referenced discussions took place.[3] The relevant inquiry is not whether respondent was or was not examined, but rather the steps—or reasonable efforts—that the petitioner took to obtain the examination. In this case, there are no facts to support the court's finding.

In contrast, in *In re MAT*, ___ Mich App at ___; slip op at 4, the Court addressed the similar argument that the trial court failed to "ensure that petitioner had put forth a reasonable effort to obtain an evaluation for her before issuing a court order." The Court disagreed with the respondent's arguments, noting that the respondent's father gave repeated testimony during the hearing regarding what he did to secure the examination:

---

[3] At the hearing, petitioner said respondent ceased taking medication three years earlier, confirmed that she had recently talked with respondent about the fact that respondent was still not taking medication, and confirmed that respondent had recently been hearing voices; however, there was no indication as to when the discussions regarding respondent's alleged refusal to see a doctor occurred, i.e., there was no indication when reasonable steps to secure an examination had allegedly occurred.

The record reveals that the trial court questioned respondent's father many times about that issue. During the hearing on December 1, 2023, the trial court asked him whether respondent had recently refused to go for a mental-health evaluation. He stated that she had, and that she was displaying "unusual behavior" and was uttering "phrases or statements that, uh, cause us concern." He explained that "I contacted her internal medicine doctor and, uh, I had said—I wanted to give her information to reach out to our daughter and asked if she'd at least go see her. And, uh—and see—and she refused to even do that." When the trial court asked him whether respondent would "voluntarily comply" with a court order for an assessment, or if "it's going to be necessary that peace officers transport her for that evaluation[,]" he stated: "I don't know. But I would hope that she would go peacefully if you had signed a court order." [*Id*. at ___; slip op at 4.]

In light of the guiding principle that the requirements of the Mental Health Code are not simply technicalities and that strict compliance is required, Niran's one-word response in her petition and the court's lack of sufficient additional inquiry at the hearing demonstrate that the record was insufficient to support the court's finding that reasonable efforts were made to secure respondent's examination. The trial court clearly erred when it concluded otherwise.

Because we agree with respondent that the trial court clearly erred when it found that she was a person requiring treatment, and that reasonable efforts were made to secure her examination, we need not reach the constitutional question presented in respondent's brief regarding whether she was deprived of due process as a result of the court's actions. See *LeFever v Matthews*, 336 Mich App 651, 674; 971 NW2d 672 (2021) (stating that the "widely accepted and venerable rule of constitutional avoidance counsels that we first consider whether statutory or general law concepts are instead dispositive").

### III. PROTECTIVE ORDER

Respondent also argues that the trial court abused its discretion when it denied her petition for protective order. According to respondent, the court should have exercised its inherent authority to require petitioners to obtain approval before they could file any more petitions regarding respondent. We disagree.

The trial court found that respondent's petition for a protective order was sought under MCL 700.5401. Although respondent contends that the court had authority to grant the petition, respondent does not take issue with the trial court's finding that the petition, as filed, was done so under that statute. Under MCL 700.5401(3):

(3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:

(a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

(b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

In the petition, however, respondent asserted that she was "unable to manage property and business affairs effectively," not for any of the statutorily-prescribed reasons, but because she was "[c]onsistently being wrongfully petitioned for mental health treatment." As the court noted when it denied the petition, such a reason was not a prescribed justification for a protective order under MCL 700.5401(3)(a). The court stated: "I reviewed the petition. I don't disagree with you that, perhaps, there is a [sic] abuse of process going on by the family. However, what you've asked for is a protective order under MCL 700.5401. And your petition doesn't meet the standard for a protective order." Thus, it was not an abuse of discretion for the trial court to deny the petition on the basis that respondent sought relief unavailable under that statute.

Respondent argues, however, that the court nevertheless should have granted the petition under its inherent authority to protect the integrity of the court system. This issue has not been preserved, so plain-error review applies. *In re MAT*, ___ Mich App at ___; slip op at 3. ("Although the plain-error rule cannot afford relief in civil cases, that restriction does not apply to civil-commitment proceedings which present different constitutional considerations than traditional civil cases.") (citation omitted).

"[T]rial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Swain v Morse*, 332 Mich App 510, 521; 957 NW2d 396 (2020) (quotation marks and citation omitted; alteration in original). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 521-522 (quotation marks and citation omitted). Circumstances in which courts have exercised this authority include instances in which "the plaintiff threatened three of the defendant's witnesses with physical injury and committed acts of vandalism against them" or were engaging "in a concerted and wide-ranging campaign in the weeks before various scheduled trial dates to publicize the details of the inadmissible evidence through the mass media and other available means." *Id*. at 522-523 (quotation marks and citation omitted).

Thus, for the trial court to exercise such authority, it must be made on the basis of a finding of misconduct by one of the parties. Here, while the trial court stated that there may be "abuse of process going on by the family," there are no findings by the court or otherwise any indication in the record that petitioners were engaging in misconduct such that the court could sanction them. It is accurate that petitioners filed many petitions for mental health treatment regarding respondent, however, that alone does not amount to misconduct. See MCL 330.1434(1) ("Any individual 18 years of age or over may file with the court a petition that asserts that an individual is a person requiring treatment."). The record also shows that the prior petitions were approved, giving them facial appearance of validity. Without any findings or evidence of misconduct, it cannot be said that the trial court plainly erred when it failed to exercise its inherent authority to sanction petitioners by requiring review before they filed any other petitions.

We affirm the order in Docket No. 373543, reverse the order in Docket No. 374600, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace