*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EMILY BATES.

VALERIE EVANS,

        Petitioner-Appellee,

v

EMILY BATES,

        Respondent-Appellant.

UNPUBLISHED
November 17, 2022

No. 361062
Washtenaw County Probate Court
LC No. 22-000224-MI

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the probate court's order that she receive mental health treatment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent obtained mental health inpatient treatment at the University of Michigan Hospital (the hospital) in early April 2022, the most recent of a series of hospitalizations and emergency room visits for respondent between November 2020 and September, 2021. Doctors issued two clinical certificates[1] that specified respondent's diagnosis as "unspecified psychotic disorder" and concluded that respondent was a person requiring treatment who lacked insight into her need for treatment.

---

[1] A clinical certificate is "the written conclusion and statements of a physician or a licensed psychologist that an individual is a person requiring treatment, together with the information and opinions, in reasonable detail, that underlie the conclusion, on the form prescribed by the department or on a substantially similar form." MCL 330.1400(a).

The first certificate provided facts for the determination: "[Patient] with psychotic symptoms including paranoia and disorganization that are resulting in reduced ability to function including isolating to her home in fear. [Patient] denies suicidal/homicidal ideation, intent or plan." The certificate noted that, while respondent denied homicidal ideations, there was a "risk for unintentional harm to others given symptoms of psychosis." The certificate determined that respondent could not care for her basic physical needs and reported the observation that she presented "notably disheveled, isolating to home, not buying groceries and decreased intake with reported weight loss." The second certificate indicated that respondent was "disorganized, paranoid about father with decreased ability to function and attend to basic self care [sic]." The certificate did not determine that a likelihood of harm to others existed, but stated that respondent could not attend to her basic physical needs. The certificate noted that respondent presented "[d]isheveled with decreased self care and reported decreased eating & weight loss."

Petitioner, a social worker, filed a petition seeking mental health treatment for respondent. Petitioner signified that she believed respondent had a mental illness, and checked the box indicating "as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs." Petitioner based her conclusions on her personal observations, stating that "[respondent's] presentation today is very similar to previous psychiatric admission for psychosis and delusional parasitosis."

A court liaison, a registered nurse, prepared a report on alternative mental health treatment. The liaison recommended hospitalization for up to 60 days, and assisted outpatient treatment afterward, supervised by Washtenaw County Community Mental Health (WCCMH). The liaison recommended that the assisted outpatient treatment involve respondent taking her prescribed medications, working with treatment teams, and giving permission to communicate with her family and all treatment providers, past, present, or future. The liaison acknowledged respondent's objection to communication with her family, but also noted: "It has been shown that she does involve her father both when the relationship is resolved or in conflict[,]" and, at the time the liaison wrote the recommendation, respondent resided with her father. The proposed order indicated "WCCMH or appropriate hospitals" could speak with respondent's family members, treatment providers, past, present, and future, and any other "contacts needed for collateral information and help with discharge planning."

At the mental health hearing, Dr. Scott Mariouw, a staff psychiatrist at the hospital, and respondent's attending psychiatrist at the inpatient psychiatric unit, testified regarding respondent's treatment. Dr. Mariouw diagnosed respondent with unspecified psychotic disorder attached to respondent's thoughts, as opposed to an unspecified psychotic disorder attached to respondent's mood, and noted that respondent had "multiple psychiatric admissions in the past" which included diagnoses of "various forms of psychotic disorders[,]" including unspecified psychotic disorder and ongoing delusional thoughts. Dr. Mariouw stated that respondent often went to hospitals complaining of parasites or insect infestations causing skin issues, but medical evaluations did not reveal any infestation or infection. Dr. Mariouw also expressed concern regarding respondent's reports of abuse from "numerous family members" because it was difficult to determine if these reports were delusions. Respondent's delusions impaired her ability to function, as evidenced by her frequent hospitalizations. While respondent had no suicidal or

homicidal thoughts, Dr. Mariouw had concern that respondent's delusions posed a risk of unintentional harm.

Dr. Mariouw stated that he needed to "clarify what [the] dynamic" between respondent and her father because the hospital wanted to respect respondent's reports of abuse, but also needed to consider the fact that respondent's father sought guardianship and previously served as respondent's guardian. Dr. Mariouw also noted that respondent lived with her father recently but planned to leave which sparked concern regarding her ability to function. Respondent did not understand her need for treatment, solely focused on treating her attention-deficit/hyperactivity disorder (ADHD), and only willingly took stimulants to treat her ADHD which worsened her mental illness. Dr. Mariouw confirmed that respondent expressed that she did not want the hospital to contact her father; and when respondent's attorney asked if it would be possible to perform the Adult Protective Services (APS) investigation first before contacting respondent's father, Dr. Mariouw had responded: "We're happy to do that. Yes."

Respondent's counsel explained that respondent only objected to the order requiring mental health respecting the provision allowing the hospital to contact respondent's father. Respondent pointed to Dr. Mariouw's agreement to refrain from contacting respondent's father until after the APS investigation concluded and asked the trial court to "fashion a remedy that allows that to happen." The probate court determined that petitioner established by clear and convincing evidence that respondent was a person requiring treatment because of her inability to attend to her basic physical needs, noting her poor nutrition and isolation. The trial court acknowledged that respondent did not understand her need for treatment, which increased her chances of relapse and "present[ed] a substantial risk of significant physical or mental harm to herself or others." The court granted the petition but refused to restrict the hospital's ability to contact respondent's father. It explained that it understood that respondent believed she suffered abuse at that hands of relatives and others but declined to direct the hospital regarding how to treat her and in what order, leaving such decisions to the hospital. The court expressed approval to Dr. Mariouw's plan on how to proceed.

## II. PRESERVATION

"Generally, to preserve a claim of error for appellate review, the party claiming the error must raise the issue in the trial court." *Redmond v Heller*, 332 Mich App 415, 430; 957 NW2d 357 (2020). Respondent preserved her argument regarding the trial court's refusal to incorporate the parties' agreement into its order by requesting that the trial court include in its order a requirement that the hospital refrain from contacting respondent's father until it completed its APS investigation. Respondent, however, admits that she did not raise the issue of the petition's factual deficiency to the trial court, and therefore, this issue is not preserved for appellate review.

> Although this Court need not address an unpreserved issue, it may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. [*Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010) (citation omitted).]

## III. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). "We review de novo matters of statutory interpretation." *Id.* "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* "The probate court necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citation omitted). "A lower court's error is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. MCR 2.613(A)." *Portus*, 325 Mich App at 396 (quotation marks omitted). "An error is harmless if it did not affect the outcome of the proceeding." *Id.*

"We review unpreserved issues for plain error." *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). Specifically: "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 427 (citations and quotation marks committed). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceeding." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## IV. ANALYSIS

## A. FACTUAL BASIS FOR PETITION

Respondent first argues that the petition was factually deficient and the trial court erred by holding the mental health hearing. We disagree.

The trial court did not err by holding the mental health hearing because petitioner adequately supported the petition with facts asserting that respondent required treatment. MCL 330.1434 of the Mental Health Code, MCL 330.1001 *et seq.*, states the procedural and substantive requirements for a petition for mental health treatment as follows:

> (1) Any individual 18 years of age or over may file with the court a petition that asserts that an individual is a person requiring treatment.

> (2) The petition shall contain the facts that are the basis for the assertion, the names and addresses, if known, of any witnesses to the facts, and, if known, the name and address of the nearest relative or guardian, or, if none, a friend, if known, of the individual.

> (3) Except as provided in subsection (7), the petition shall be accompanied by the clinical certificate of a physician or a licensed psychologist, unless after reasonable effort the petitioner could not secure an examination. If a clinical certificate does not accompany the petition, the petitioner shall set forth the reasons

-4-

an examination could not be secured within the petition. The petition may also be accompanied by a second clinical certificate. If 2 clinical certificates accompany the petition, at least 1 clinical certificate must have been executed by a psychiatrist.

(4) Except as otherwise provided in subsection (7) and section 455, a clinical certificate that accompanies a petition must have been executed within 72 hours before the filing of the petition, and after personal examination of the individual.

(5) If the individual is found not to be a person requiring treatment under this section, the petition and any clinical certificate shall be maintained by the court as a confidential record to prevent disclosure to any person who is not specifically authorized under this chapter to receive notice of the petition or clinical certificate.

(6) The petition described in this section may assert that the subject of the petition should receive assisted outpatient treatment in accordance with section 468(2)(d).

(7) A petition that does not seek hospitalization but only requests that the subject of the petition receive assisted outpatient treatment is not subject to subsection (3) or (4).

MCL 330.1401(1)(b) explains a "person requiring treatment" is:

An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

The parties do not dispute that respondent qualifies as a person requiring treatment. Petitioner checked the box in the petition indicating respondent was unable to attend to her basic physical needs which were required to avoid serious harm. Petitioner also asserted that respondent presented "very similar" to her previous admissions for psychosis and delusional parasitosis. In addition to the petition, two clinical certificates were provided by two psychiatrists, as required by MCL 330.1434(3) and (4), who determined that respondent suffered from mental illness and diagnosed respondent with unspecified psychotic disorder. The certificates noted respondent's paranoia and disorganization, inability to attend to her basic physical needs, and inability to understand her need for treatment. One certificate also determined that respondent posed a risk of unintentional harm. The certificates provided factual support for their conclusions, stating respondent's paranoia, disorganization, isolation in her home, poor nutrition, and disheveled appearance. The facts stated in the petition were supported by the petitioner's personal and professional observations as a social worker. The two clinical certificates also set forth facts that supported the petition with the doctors' determinations. The petition, therefore, met the statutory requirements and the probate court did not err by holding a hearing to determine whether respondent required mental health treatment.

## B. INCORPORATION OF PARTIES' AGREEMENT

Respondent also contends that the trial court erred when it refused to incorporate into its order requiring mental health treatment the parties' agreement that the hospital refrain from contacting respondent's father until after the APS investigation. We disagree.

"A trial court has the inherent authority to control its own docket." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016). "A court possesses inherent authority to enforce its own directives." *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708 (1993). A trial court also has the express authority to direct and control the proceedings before it. MCL 600.611 provides that "[c]ircuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." "An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion." *Colen v Colen*, 331 Mich App 295, 304; 952 NW2d 558 (2020) (quotation marks and citation omitted). "An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes." *Id.* Once the party seeking to add a new argument exceeds the temporal window of amendment by right, the trial court has authority to refuse to consider a new issue. Similarly, here, the trial court, in managing its own docket, had the discretionary authority to not consider an agreement the parties made minutes earlier at the hearing in which the trial court was tasked solely with determining whether the petition sufficed to warrant ordering respondent to undergo mental health treatment.

Further, the trial court indicated that it would not dictate the manner in which the hospital treated respondent and would not limit the hospital's ability to speak to respondent's family "in the order that they think is most appropriate to her . . . wellness." Dr. Mariouw indicated he would refer for investigation respondent's abuse allegations and would wait to discuss respondent's treatment with her father until after the APS investigation concluded. Further, because respondent was hospitalized at the time, the hospital could protect her from any alleged abuse. The hospital, however, may need to speak with respondent's family and other treatment providers to gain insight into respondent's condition and treatment history to properly ascertain how her treatment should proceed. Contact with respondent's father may be especially significant, considering his past guardianship and his interest in reinitiating guardianship. The trial court did not abuse its discretion by declining to make a ruling on the parties' impromptu, informal agreement that the hospital refrain from contacting respondent's father until the conclusion of an APS investigation.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford

-6-