*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JH.

MARKELL SMITH,

      Petitioner-Appellee,

v

JH,

      Respondent-Appellant.

UNPUBLISHED
August 22, 2024

No. 365530
Oakland Probate Court
LC No. 2018-382437-MI

Before: YATES, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Since 2018, the probate court has ordered respondent, JH, to attend involuntary mental health examinations and treatment. In this case, JH's case manager, Markell Smith, petitioned the court to order JH to undergo a mental health examination and treatment after JH threatened employees and students at the University of Detroit Mercy Dental School. A jury found that respondent required treatment, and the probate court ordered JH to a combined program of hospitalization and outpatient services. JH appeals this order, arguing that the probate court lacked jurisdiction over his case because the petitions contained defects. JH also argues that the probate court violated his due process rights and made factual findings that the jury should have decided. We disagree and affirm.

## I. BACKGROUND

On February 15, 2023, Smith petitioned in the probate court after JH posted a video "wishing death" on the students and employees of the Detroit Mercy Dental School. Smith stated that JH needed treatment and requested that an officer transport him to a mental health examination. After a hearing on the petition, the probate court ordered an officer to transport JH to Common Ground, an Oakland County mental health agency, for an examination because JH was described as "noncompliant." Psychiatrist Dr. Maninderpal Dhillon examined JH at Common Ground and signed a clinical certificate stating that JH required mental health treatment on

-1-

February 16, 2023. The following day, JH was transferred to Havenwyck Hospital and psychiatrist Dr. Venkata Jasty also examined him and signed a clinical certificate stating that JH required treatment. Smith then filed a second petition, asking the probate court to order JH to undergo involuntary mental health treatment with the clinical certificates attached in support.

Before trial, JH exercised his right to represent himself and requested a jury. JH also submitted objections to the petitions and questioned Smith's statement that he was noncompliant. At trial, JH moved to dismiss the petition on the same grounds he raised in his objections. The probate court denied his motion. After hearing testimony from a psychiatrist who was familiar with JH's case since 2018, the jury found that JH required treatment. The probate court ordered JH to a combined treatment of hospitalization and outpatient services, and denied JH's two motions for reconsideration. This appeal followed.

## II. SUBJECT-MATTER JURISDICTION

JH argues that the probate court did not have subject-matter jurisdiction over his case because both the petitions and clinical certificates were defective and should have been dismissed.

## A. LEGAL PRINCIPLES

" 'Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it.' " *In re Eddins*, 342 Mich App 529, 538; 995 NW2d 604 (2022) (citation omitted). In other words, subject-matter jurisdiction is a court's ability to hear a certain *type of case*, but does not address whether the case pending before it should continue based on its facts or legal issues. *Id*. at 538-539 (quotation marks and citation omitted). Probate courts are courts of "limited jurisdiction" and derive their power from statutes. *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). Proceedings for involuntary mental health treatment under the Mental Health Code, MCL 330.1001 *et seq*, are generally known as civil-commitment proceedings. *In re Londowski*, 340 Mich App 495, 503; 986 NW2d 659 (2022). A probate court has jurisdiction over civil-commitment proceedings. *Eddins*, 342 Mich App at 541.

Whether the probate court had subject-matter jurisdiction is a question of law that we review de novo. *Id*. at 536. De novo review means that this Court reviews "the issues independently" and does not need to defer to the trial court. *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). That said, we review the probate court's dispositional decisions for an abuse of discretion and the probate court's factual findings for clear error. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). "An abuse of discretion occurs when the probate court 'chooses an outcome outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted). " 'A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding.' " *Id*. (citation omitted). To the extent that we must interpret the Mental Health Code, we review de novo issues of statutory interpretation. *Id*.

## B. DISCUSSION

## 1. DEFICIENCIES IN PETITIONS

As stated, JH argues that the probate court lacked subject-matter jurisdiction over both petitions because they failed to comply with the Mental Health Code.

The Mental Health Code provides that "[i]ndividuals shall receive involuntary mental health treatment only pursuant to the provisions of this act." MCL 330.1403. This statute creates a framework for a probate court to order a person to undergo longer-term mental health services and hospitalization, MCL 330.472a(1), as well as court-ordered, MCL 330.1438, and medically-certified, MCL 330.1423, short-term hospitalizations. Under MCL 330.1434:

> (1) Any individual 18 years of age or over may file with the court a petition that asserts that an individual is a person requiring treatment.
>
> (2) The petition shall contain the facts that are the basis for the assertion, the names and addresses, if known, of any witnesses to the facts, and, if known, the name and address of the nearest relative or guardian, or, if none, a friend, if known, of the individual.
>
> (3) . . . [T]he petition shall be accompanied by the clinical certificate of a physician or a licensed psychologist, unless after reasonable effort the petitioner could not secure an examination. If a clinical certificate does not accompany the petition, the petitioner shall set forth the reasons an examination could not be secured within the petition. The petition may also be accompanied by a second clinical certificate. If 2 clinical certificates accompany the petition, at least 1 clinical certificate must have been executed by a psychiatrist.
>
> (4) . . . [A] clinical certificate that accompanies a petition must have been executed within 72 hours before the filing of the petition, and after personal examination of the individual. [MCL 330.1434(1)-(4).]

"If the petition is not accompanied by a clinical certificate, and if the court is satisfied a reasonable effort was made to secure an examination, the court shall order the individual to be examined by a psychiatrist and either a physician or a licensed psychologist." MCL 330.1435(2). In the case that "it appears to the court that the individual will not comply with an order of examination under section [MCL 330.1435], the court may order a peace officer to take the individual into protective custody" and transport the individual to receive "the ordered examination or examinations." MCL 330.1436(1).

Because the probate court did not clearly err when it found that Smith made a reasonable effort to have JH examined, we disagree with JH's argument that the February 15, 2023 petition was defective on this ground. During trial, Smith explained that he believed a court-ordered examination was necessary because JH was noncompliant with a wellness check and taking his medication. In contrast, JH asserted that he was willing to attend an examination. JH played a recording of a February 14, 2023 call in which he and Smith discussed JH seeing a psychiatrist the

-3-

following week. But according to Smith, he called JH again the next day to schedule an in-person wellness check and JH would not share his location. In an audio recording of that phone call, Smith asked JH where he was because the police wanted to check on what was going on, and JH replied, "I hear you. I ain't telling you. They need to do their research. I ain't telling nobody." JH also did not respond to Smith's supervisors' calls.

At trial, the probate court determined Smith's assertion that JH was noncompliant was a "fair interpretation" and that the petition did not contain a false statement. This finding was not clearly erroneous. Although JH was initially willing to speak with a psychiatrist, he was unwilling to share his location with Smith or answer other phone calls. It was therefore reasonable for Smith to conclude that JH would not willingly attend an examination and court involvement was necessary.

JH also argues that the petitions were defective because the allegations against him were unconfirmed. The factual basis for the petition stated: "[JH] has made threatening [YouTube] videos against students and employees at Detroit Mercy Dental School, wishing death." According to JH, "wishing death" upon someone is not a threat. But the Mental Health Code only requires that "[t]he petition shall contain the facts that are the basis for the assertion" that a person requires treatment. MCL 330.1434(2). As the probate court recognized, the meaning of JH's statements was a matter of interpretation, but the petition clearly contained the facts supporting Smith's assertion that JH required treatment. See MCL 330.1434(2).

## 2. TIMELINESS OF EXAMINATIONS

Next, JH argues that the probate court lacked subject-matter jurisdiction over the petitions because his examinations occurred more than 24 hours after he was processed at Common Ground.

If a probate court orders an examination, "[t]he individual may be received and detained at the place of examination as long as necessary to complete the examination or examinations, but not more than 24 hours." MCL 330.1435(2). Additionally, "[a] hospital designated by the department or by a community mental health services program shall hospitalize an individual presented to the hospital, pending receipt of a clinical certificate by a psychiatrist stating that the individual is a person requiring treatment, if a petition, a physician's or a licensed psychologist's clinical certificate, and an authorization by a preadmission screening unit have been executed." MCL 330.1423.

> A hospital . . . shall receive and detain an individual presented for examination under . . . [MCL 330.1435, 1436, or 1438] for not more than 24 hours. During that time the individual must be examined by a physician or a licensed psychologist unless a clinical certificate has already been presented to the hospital. . . . If the examining physician or psychologist executes a clinical certificate, the individual may be hospitalized under [MCL 330.1423]. [MCL 330. 1429.]

\* \* \*

-4-

If a patient is hospitalized under [MCL 330.1423], the patient shall be examined by a psychiatrist as soon after hospitalization as is practicable, but not later than 24 hours, excluding legal holidays, after hospitalization. The examining psychiatrist shall not be the same physician upon whose clinical certificate the patient was hospitalized. If the psychiatrist does not certify that the patient is a person requiring treatment, the patient shall be released immediately. If the psychiatrist does certify that the patient is a person requiring treatment, the patient's hospitalization may continue pending hearings convened pursuant to [MCL 330.1451] to [MCL 33.1465]. [MCL 330.1430.]

Although unclear from the record, JH states in his brief that he was processed at Common Ground on February 15, 2023, at 6:11 p.m., and admitted to Havenwyck on February 17, 2023, at 1:00 a.m. Accepting JH's statement of these events as true, the examinations both occurred within the required timeframes. According to Dr. Dhillon's statements in his clinical certificate, he examined JH at Common Ground at 11:00 a.m. on February 16, 2023.[1] Dr. Dhillon's certificate stated that he believed that JH required treatment and recommended a combination of hospitalization and outpatient treatment. Once Dr. Dhillon executed his clinical certificate, and Common Ground authorized hospitalization, JH was permitted to be hospitalized under MCL 330.1423. JH was then taken to Havenwyck on February 17, 2023, where Dr. Jasty examined him at some point that morning. Dr. Dhillon's examination occurred before the hospitalization and within 24 hours after JH was temporarily detained, as required under MCL 330.1435(3), and Dr. Jasty's examination occurred within 24 hours after JH was hospitalized, as required under MCL 330.1430.[2] After Dr. Jasty executed his clinical certificate, JH could remain hospitalized throughout the proceedings. See MCL 330.1430. Moreover, even if we were to find error in the timing of these examinations, JH does not demonstrate *how* such an error would invalidate the clinical certificates or the petitions, especially because both clinical certificates were executed 72 hours before the February 17, 2023 petition that was the basis for the jury trial and the probate court's final order. See MCR 330.1434(4).

### 3. DEFICIENCIES IN THE CLINICAL CERTIFICATES

JH also challenges the clinical certificates that supported Smith's petition. A clinical certificate is "the written conclusion and statements of a physician or a licensed psychologist that an individual is a person requiring treatment, together with the information and opinions, in

---

[1] JH argues that Dr. Dhillon's examination occurred at 9:32 a.m. rather than at 11:00 a.m. The approximate 1½ hour time difference does not impact our conclusion because the examination occurred within 24 hours after JH was taken to Common Ground. See MCL 330.1435(3).

[2] JH also argues that Dr. Jasty incorrectly stated that his examination occurred on February 17, 2023, at 12:30 a.m., because it actually occurred on February 17, 2023, at 11:15 a.m. The probate court agreed that the examination likely did not occur at 12:30 a.m., but concluded that this was a harmless error. We agree with the probate court's conclusion because, whether or not the examination was at 12:30 a.m. or 11:15 a.m., it occurred within 24 hours after JH was hospitalized at Havenwyck. See MCL 330.1430.

reasonable detail, that underlie the conclusion, on the form prescribed by the department or on a substantially similar form." MCL 330.1400(a).

According to JH, Dr. Dhillon's and Dr. Jasty's clinical certificates were defective because the doctors did not read him an opening statement. The opening statement is outlined on the first page of the clinical certificate form and describes the purpose of the examination and that the physician may have to disclose details of the examination to the probate court. The form cites MCL 330.1750, which addresses physician disclosure of privileged communications in a legal setting. But the Mental Health Code itself does not explicitly require the opening statement. Therefore, we conclude that the opening statement is intended to acknowledge and satisfy the physician's duties when handling and disclosing privileged information. Moreover, both physicians affirmed in their clinical certificates, under penalty of perjury, that they read JH the opening statement before conducting their examinations. As the probate court noted when JH raised the issue, JH does not cite any provision of the Mental Health Code that would invalidate the clinical certificates even assuming neither doctor provided an opening statement. The clinical certificates were not defective on this ground.

JH also challenges the content of Dr. Dhillon's clinical certificate, such as the examination's reported length and Dr. Dhillon's statements about JH's need for treatment. As to the disputed length, the Mental Health Code does not specify how long an examination must be to satisfy its requirements. JH argues his examination only lasted around 2 minutes, though Dr. Dhillon reported it lasted for 25 minutes. This is a factual dispute that we may not decide, though as the probate court noted, Dr. Dhillon's certificate may have encompassed more than his examination with JH, such as the time he spent reviewing JH's mental health records. Therefore, no error occurred in the length of the exam. JH further disputes Dr. Dhillon's statement that JH was "not sleeping or eating for several days." JH argues that Common Ground's clinical notes reflect that JH was resting during the morning of Dr. Dhillon's examination. Though these notes were not admitted in the probate court, when Dr. Dhillon's statement is viewed in context, it related to JH's conduct in the days before his admission at Common Ground, not the morning of his examination. Accordingly, these allegations do not make the clinical certificate defective.

JH likewise takes issue with the fact that his examination with Dr. Dhillon occurred over the phone, though the clinical certificate does not indicate where he was examined. Even accepting JH's account, the examination met the requirements of MCL 330.1434(4). The Mental Health Code requires that a clinical certificate be executed after "personal examination" of the individual named in the clinical certificate or petition. MCL 330.1425; MCL 330.1434(4). The statute does not define "personal." During a phone examination, Dr. Dhillon may not have seen JH's appearance. But Dr. Dhillon could have still observed JH's thoughts and mood through his tone of voice and statements to determine whether JH had a mental illness and required treatment. See MCL 330.1400(g) (defining "mental illness" as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life"); MCL 330.1401. Accordingly, Dr. Dhillon's interaction with JH would have satisfied the requirement of a "personal examination," and the use of a telephone to conduct the examination did not violate MCL 330.1434(4).

We are also unpersuaded by JH's argument that the certificates were defective because he was examined by two psychiatrists, rather than a psychiatrist and a physician or licensed

-6-

psychologist. When the petition is supported by two clinical certificates, "*at least* 1 clinical certificate must have been executed by a psychiatrist." MCL 330.1434(3) (emphasis added). If the petition is already accompanied by one clinical certificate, the court must order another examination by a psychiatrist. MCL 330.1435(1). Therefore, the clinical certificates of two psychiatrists (who are also physicians) are always acceptable.

### 4. LACK OF SUBJECT-MATTER JURISDICTION

Even if we were to conclude that there were deficiencies in the petitions, a probate court's subject-matter jurisdiction does not depend on whether a petition for mental health treatment strictly complies with the Mental Health Code. *Eddins*, 342 Mich App at 541. We addressed a similar issue in *Eddins*, when a petition for continuing mental health treatment did not fully comply with the Mental Health Code. *Id*. at 536-537. Though the petition contained defects, the probate court had subject-matter jurisdiction because it retained the power to try cases filed under the Mental Health Code. *Id*. at 542. Similarly, here, the defects alleged by JH, even if true, did not strip the probate court of its power to hear his case. For this reason, we conclude that the probate court had subject-matter jurisdiction over this case.

### III. DUE PROCESS

JH next argues that the probate court deprived him of his right to due process by failing to notify him of the hearing on the February 15, 2023 petition.

### A. LEGAL PRINCIPLES

JH did not raise this issue in the probate court. Therefore, it is not preserved for appellate review. See *In re Jestila*, 345 Mich App 353, 355 n 3; 5 NW3d 362 (2023) (explaining that, in an involuntary mental health treatment order appeal, a party must raise the issue in the probate court to preserve the issue for appeal). In the criminal context, this Court will review an unpreserved error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under this standard, a party must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings. *Id*. Although the plain-error rule of *Carines* generally does not apply to civil cases, *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 5, it may apply in certain contexts when a case presents constitutional considerations, see *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7 (child-custody cases); *Tolas Oil*, ___ Mich App at ___; slip op at 5 n 3 (termination of parental rights cases). Because respondents in civil-commitment proceedings have constitutional due-process rights that must be protected, we apply the plain-error rule to JH's unpreserved argument. See *Jestila*, 345 Mich App at 356.

### B. DISCUSSION

Respondents in civil commitment hearings enjoy due process rights, which include notice and the opportunity to be heard. *Id*. "[T]he procedures embodied in the Mental Health Code satisfy due process guarantees.' " *Id*. MCR 5.734 is specific to mental health proceedings and

outlines the notice-of-hearing and service-of-process requirements. Individuals must generally be served with process personally. MCR 5.734(A). The Mental Health Code provides that the subject of the petition has the right to be present at the civil-commitment proceeding and provides, in relevant part, that "[t]he court shall cause notice of a petition and of the time and place of any hearing to be given to the subject of the petition . . . ." MCL 330.1453(1). The probate court must provide the subject of the petition notice of the right to a hearing and to be present at the hearing within four days after the court receives the petition and clinical certificates. MCL 330.1453(2). The court should schedule a hearing on a petition for mental health treatment within seven days after the court receives a petition for involuntary mental health treatment with supporting clinical certificates. MCL 330.1452(1)(a). With some limited exceptions that do not apply here, the individual who is the subject of the petition generally has the right to be present at all hearings. MCL 330.1455(1).

As stated, the Mental Health Code outlines the procedures for taking a person into custody to perform an examination when that person will not submit voluntarily. See MCL 330.1435(2); MCL 330.1436(1). There is no indication in MCL 330.1436 that the probate court must provide notice before issuing an order to take the person into protective custody. Instead, this section addresses the emergency circumstances in which the person refuses to submit to an examination.

In this case, JH would not disclose his location so police could perform a wellness check following JH's threats to the Detroit Mercy Dental School. JH's conduct prompted Smith to ask the probate court for an examination at Common Ground. The probate court held a hearing on the petition for transportation on February 15, 2023, but it is unclear what happened during the hearing because it was not recorded. JH argues that he was not notified of the hearing, and the record does not reflect any attempt to serve JH with a notice of hearing. In its order after the hearing, the probate court found that Smith made a reasonable effort to secure an examination, and ordered JH to undergo an examination with a psychiatrist and a physician or licensed psychologist at Common Ground. Although the court did not initially order hospitalization, the court also found that JH required an immediate assessment because he presented a substantial risk of harm to himself or others in the near future, and ordered that a peace officer must take JH into protective custody and transport him to a prescreening unit or hospital. See MCL 330.1436; MCL 330.1438.

JH does not point to any portion of the Mental Health Code or the Michigan Court Rules that required the probate court to give him notice or the opportunity to be heard under the emergency circumstances involving a petition for a transportation order. This case also differs from *Jestila*, 345 Mich App at 354-355, because, in that case, the respondent was not notified properly about a rescheduled hearing on the petition for continuing mental health treatment, whereas in this case, there is no dispute that JH was notified about the hearing and jury trial on the February 17, 2023 petition. Therefore, the probate court did not commit a clear legal error to deprive JH of due process.

## IV. FACTUAL FINDINGS

Lastly, JH argues that the probate court erroneously made factual findings on JH's need for treatment before the jury issued its verdict. JH did not preserve this issue in the trial court, so our review is for plain error. See *Carines*, 460 Mich at 7763. Yet nothing in the record supports this argument. And even if the probate court had made a finding that JH was a person requiring

-8-

treatment after JH invoked his right to a jury trial, JH cannot demonstrate prejudice.  The probate court held a trial on the issue and the jury issued a verdict finding JH required treatment.  We further note that JH does not challenge the sufficiency of the evidence presented supporting the jury's verdict or the probate court's disposition following the jury's verdict.

We affirm.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett