*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MAT.

CRAIG TROMBLEY,

      Petitioner-Appellee,

v

MAT,

      Respondent-Appellant.

FOR PUBLICATION
October 15, 2024
9:38 AM

No. 369255
Washtenaw Probate Court
LC No. 23-000902-MI

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

YATES, P.J.

This civil-commitment proceeding under the Mental Health Code, MCL 330.1001 *et seq*., began when petitioner, Craig Trombley, requested mental-health treatment for his adult daughter, respondent, MAT. The trial court ordered a mental-health examination for respondent, and then committed respondent to combined hospitalization and assisted outpatient treatment for no more than 180 days, with an initial hospitalization period of up to 60 days. Respondent challenges both orders. We affirm.

## I. FACTUAL BACKGROUND

Respondent was diagnosed with attention deficit hyperactivity disorder (ADHD) when she was 15 years old and saw her primary care physician once a month to renew her ADHD medication prescription. On November 30, 2023, when respondent was 34 years old, her father filed a petition requesting mental-health treatment for respondent. At that time, respondent and her four-year-old child had been living with her parents for five years. On December 1, 2023, the trial court held a hearing on Zoom to consider whether respondent required a mental-health evaluation. Respondent was not present at that hearing, where respondent's father testified that respondent was displaying "erratic behavior," including "[p]hysically and verbally abusive behavior[,]" and that "two or three days ago she kicked down a bathroom door from the inside when no one was at home." He asked the trial court to render an "emergency pick up order so she can get an assessment and we can get her into an outpatient treatment." The trial court ordered respondent to take part in a mental-health

evaluation, and directed that "if she won't voluntarily comply, then peace officers can take her in to protective custody for that transport."

Shortly after the trial court issued an "Order for Examination/Transport," respondent was examined by a physician and a psychiatrist who both indicated that respondent required "treatment under the Mental Health Code" and "hospitalization pending the hearing." On December 6, 2023, the trial court conducted a mental-health hearing, where Dr. Daniel Blake, a licensed psychologist, testified that he had interviewed respondent and reviewed her medical records, leading him to the conclusion that "it would be nearly impossible to live with her in the state of mind that she is—is currently in" because she "is unstable and I do think she can be a danger to both herself and others." Dr. Blake stated that "[t]he record reflects that she had made comments about, uh, wanting her . . . family dead. Wanting to die herself." After Dr. Blake testified, respondent testified about her own medical history, her use of prescription medications, and her intention to participate in "medication review and treatment." The trial court then granted the petition and entered an order for "combined hospitalization and assisted outpatient treatment for no longer than 180 days" with an initial period of hospitalization "up to 60 days." After the trial court announced its ruling, respondent requested a jury trial, but the trial court stated "that's too late" and ended the hearing. This appeal followed.

## II. LEGAL ANALYSIS

Respondent presents four issues on appeal. First, she contends that her constitutional due-process rights were violated because she did not receive notice of the initial hearing to determine whether she was in need of a mental-health evaluation. Second, she claims the trial court plainly erred by conducting the mental-health hearing after she had been hospitalized longer than the 24 hours permitted under the Mental Health Code. Third, she insists that the trial court plainly erred by finding that she was a "person requiring treatment" based on Dr. Blake's testimony because Dr. Blake relied upon respondent's father's biased and unsubstantiated statements. Fourth, she asserts that the trial court abused its discretion by ending the mental-health hearing despite knowing that respondent had requested a jury trial. We shall address each of these arguments in turn.

## A. NOTICE OF INITIAL HEARING AND PETITION

Respondent argues that her constitutional due-process rights were violated because she did not receive notice of the initial hearing to determine whether she needed a mental-health evaluation and a "reasonable effort" was not made to secure her mental-health evaluation before the trial court entered the order on December 1, 2023, directing that respondent "be hospitalized" for the mental-health evaluation after she was taken "into protective custody" and transported to the hospital. We review "de novo a matter of statutory interpretation." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019). But we review "for an abuse of discretion a probate court's dispositional rulings" and we review "for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). In this case, however, the due-process issue was not preserved for appellate review, so our analysis is confined to a review for plain error

affecting respondent's substantial rights.[1]  *In re JH*, unpublished per curiam opinion of the Court of Appeals, issued August 22, 2024 (Docket No. 365530), p 7.  "Under this standard, a party must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings."  *Id*.

Under Michigan law, civil-commitment proceedings "implicate important liberty interests, protected by due process, that belong to the person who is the subject of a petition for involuntary mental health treatment."  *In re Londowski*, 340 Mich App 495, 508; 986 NW2d 659 (2022).  Due process requires notice of the proceedings and a meaningful opportunity to be heard.  *In re CLJ*, 345 Mich App 353, 356; 5 NW3d 362 (2023).  This Court must balance "the individual's interest in not being subject to involuntary mental health treatment against the state's interest in compelling mental health treatment for a particular individual."  *In re Londowski*, 340 Mich App at 509.

Whenever a petition seeking mental-health treatment is filed, "[i]f a clinical certificate does not accompany the petition, the petitioner shall set forth the reasons an examination could not be secured . . . ."  MCL 330.1434(3).  "If the petition is not accompanied by a clinical certificate, and if the court is satisfied a reasonable effort was made to secure an examination, the court shall order the individual to be examined by a psychiatrist and either a physician or a licensed psychologist."  MCL 330.1435(2).  "If it appears to the court that the individual will not comply with an order of examination . . . the court may order a peace officer to take the individual into protective custody."  MCL 330.1436(1).  The trial court entered such an order here.

In this case, respondent was not given notice of the petition or the initial hearing before the trial court conducted that hearing on December 1, 2023.  During that initial hearing, respondent's father described the efforts undertaken to obtain a mental-health examination for respondent.  The trial court ended the hearing by directing that respondent participate in a mental-health evaluation.  Pursuant to the trial court's order, respondent was taken into protective custody and hospitalized for a mental-health evaluation.  Days after respondent was hospitalized, she was served with the petition, a statement explaining her rights, and notice of the mental-health hearing scheduled for December 6, 2023.

The parties disagree about whether the trial court erred in failing to ensure that respondent was served with the petition and notice of the hearing on December 1, 2023, before a mental-health evaluation was ordered at that hearing.  Respondent cites MCL 330.1453(1), which provides that the trial court "shall cause notice of a petition and of the time and place of any hearing to be given to the subject of the petition . . . at the earliest practicable time and sufficiently in advance of the hearing date to permit preparation for the hearing."  Petitioner counters that that statute has nothing to do with an initial hearing to consider ordering a mental-health evaluation, contending that the "Admission by Petition statutes are silent as to any required notice for the Respondent."  This Court has observed that "[n]otice of a hearing on a civil-commitment petition is governed by § 453 of the Mental Health Code," i.e., MCL 330.1453, *In re CLJ*, 345 Mich App at 356-357, but we

---

[1] Although the plain-error rule cannot afford relief in civil cases, *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 359090), that restriction does not apply to civil-commitment proceedings, which present different constitutional considerations than traditional civil cases.  See *id*. at ___; slip op at 5 n 3.

made that observation in discussing defective notice and service in the context of a mental-health hearing, as opposed to an initial hearing for a mental-health evaluation, which is a precursor to a mental-health hearing. The two hearings are dramatically different.

Issuance of an initial pickup order for a mental-health evaluation under MCL 330.1435(2) is a streamlined process, see *In re Bradley Estate*, 494 Mich 367, 372; 835 NW2d 545 (2013), that often involves no hearing at all. Needless to say, the respondent ordinarily has no idea that such a process is underway, and a requirement of notice before issuance of a pickup order is antithetical to the purpose of that order. To draw an analogy, mandating pre-hearing notice would be similar to requiring notice and an opportunity to appear during consideration of an application for a search warrant. Beyond that, the worst outcome resulting from an order for a mental-health evaluation is detention "at the place of examination" for "not more than 24 hours." MCL 330.1435(3); see also MCL 330.1438. In contrast, the stakes are much higher at a mental-health hearing, where the trial court has the authority to enter an "order of involuntary mental health treatment" that may include hospitalization "not [to] exceed 60 days," assisted outpatient treatment "not [to] exceed 180 days," or "combined hospitalization and assisted outpatient treatment" that does not exceed 180 days with a "hospitalization portion" that does "not exceed 60 days." MCL 330.1472a(1). Significantly, the requirement of "notice of a petition and of the time and place of any hearing" is set forth in MCL 330.1453(1), which is part of the Mental Health Code concerning "Court Hearings," whereas the statutory provisions that govern mental-health evaluations are contained in a separate part of the Mental Health Code concerning "Admission by Petition." Accordingly, borrowing language from MCL 330.1453(1) regarding "Court Hearings" to prescribe standards for "Admission by Petition" seems unwise and unjustifiable. Thus, we conclude that the notice requirements set forth in MCL 330.1453(1) do not apply to the initial process of obtaining mental-health evaluations.

Respondent further asserts that the trial court erred by failing to ensure that petitioner had put forth a reasonable effort to obtain an evaluation for her before issuing a court order. The record reveals that the trial court questioned respondent's father many times about that issue. During the hearing on December 1, 2023, the trial court asked him whether respondent had recently refused to go for a mental-health evaluation. He stated that she had, and that she was displaying "unusual behavior" and was uttering "phrases or statements that, uh, cause us concern." He explained that "I contacted her internal medicine doctor and, uh, I had said—I wanted to give her information to reach out to our daughter and asked if she'd at least go see her. And, uh—and see—and she refused to even do that." When the trial court asked him whether respondent would "voluntarily comply" with a court order for an assessment, or if "it's going to be necessary that peace officers transport her for that evaluation[,]" he stated: "I don't know. But I would hope that she would go peacefully if you had signed a court order." The court then concluded that respondent was an individual in need of an "urgent mental health evaluation" and ordered that officers transport her if she failed to comply. Accordingly, the trial court did not err by finding that petitioner made a reasonable effort to secure a mental-health evaluation before issuing its order. See MCL 330.1435(2). Therefore, respondent is not entitled to any relief on this issue.

## B. LENGTH OF HOSPITALIZATION

Respondent contends that the lower-court documents imply that she was hospitalized from December 1, 2023, at 12:00 p.m. until December 2, 2023, at 10:45 p.m., which exceeded 24 hours, so the trial court plainly erred by holding the mental-health hearing. This issue was not preserved

for appeal, so our review is limited to a search for plain error that affected respondent's substantial rights. *In re JH*, unpub op at 7.

According to the Mental Health Code, whenever a respondent is ordered to be hospitalized, "[i]f the examinations and clinical certificates of the psychiatrist, and the physician or the licensed psychologist, are not completed within 24 hours after hospitalization, the [respondent] must be released" from the hospital. MCL 330.1438; see also MCL 330.1435(3) ("The individual may be received and detained at the place of examination as long as necessary to complete the examination or examinations, but not more than 24 hours."). Here, on December 1, 2023, the trial court held a hearing to determine whether respondent needed a mental-health evaluation, and it concluded the hearing at 9:37 a.m. The trial court ordered respondent to take part in a mental-health evaluation. In its order for examination and transport, the trial court ordered that respondent must be examined by a "psychiatrist *and* a physician" at Trinity Health Ann Arbor Hospital in Washtenaw County. (Emphasis added.) The trial court checked the box stating respondent "shall be hospitalized. If the examinations and clinical certificates are not completed within 24 hours after hospitalization," then respondent shall be released.

The clinical certificate filled out by "Shoshana Rudin MD," a physician, indicates that she examined respondent on December 1, 2023, at "1200" for 15 minutes at Trinity Health Ann Arbor Hospital. The "Notice of Hospitalization" indicates that respondent was thereafter hospitalized on December 2, 2023 at 9:30 a.m., and the clinical certificate from the psychiatrist that was required for hospitalization was completed on that same day at 11:00 a.m. The petition for mental-health treatment that was refiled with the trial court on December 4, 2023, indicates that the petition was received by the hospital on December 2, 2023, at 9:30 a.m. The clinical certificate completed by Dr. Venkata Jasty, a psychiatrist, states that she personally examined respondent on December 2, 2023, at 10:45 a.m. for 15 minutes at Beaumont Behavioral Health, a mental-health clinic located in Dearborn.[2]

Because the record reveals that the initial hearing on the petition was held on December 1 and ended at 9:37 a.m., it was possible for respondent to have first been examined by Dr. Rudin, a physician, at Trinity Health Ann Arbor Hospital at 12:00 p.m. But according to the trial court's order, respondent still had to be examined by a psychiatrist. The notice of hospitalization and the petition for mental-health treatment refiled with the trial court indicate respondent was hospitalized at 9:30 a.m. on December 2. Shortly thereafter, Dr. Jasty, a psychiatrist, examined respondent in Dearborn at Beaumont Behavioral Health, a different location than where Dr. Rudin's examination took place. Thus, the lower-court record reveals that respondent was first examined by a physician at a hospital in Ann Arbor immediately after the trial court's order, then hospitalized the next day at Beaumont Behavioral Health and examined by a psychiatrist within an hour of hospitalization, so the trial court did not plainly err by holding respondent's mental-health hearing on the basis of the clinical certificates because respondent's hospitalization was less than 24 hours, as required by the Mental Health Code, MCL 330.1438 and MCL 330.1435(3).

---

[2] Respondent's brief states that Dr. Jasty examined respondent at 10:45 p.m., as opposed to 10:45 a.m., but the letters written by Dr. Jasty clearly identify all times on the certificate as "AM."

## C. CLEAR AND CONVINCING EVIDENCE

Respondent claims the trial court plainly erred by finding that she was a "person requiring treatment" on the basis of Dr. Blake's testimony because he relied on statements from respondent's father, which were biased and unsubstantiated. Because this issue was not preserved for appellate review, we can consider the issue only for plain error that affected respondent's substantial rights. *In re JH*, unpub op at 7.

The Mental Health Code defines a "person requiring treatment" as:

(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

\* \* \*

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others. [MCL 330.1401(1)(a) and (c).]

According to MCL 330.1461(1), "[a]n individual may not be found to require treatment unless at least 1 physician or licensed psychologist who has personally examined that individual testifies in person or by written deposition at the hearing." And under MCL 330.1434(1), "[a]ny individual 18 years of age or over may file with the court a petition that asserts that an individual is a person requiring treatment."

Under MCL 330.1465, "[a] judge . . . shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." Evidence is "clear and convincing" when it produces "in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Hearsay refers to a statement that the declarant does not make while testifying and that a party offers "to prove the truth of the matter asserted in the statement." MRE 801(c). Generally, hearsay is inadmissible unless it falls under an exception. MRE 802. But MRE 1101(b) identifies hearings where the Michigan Rules of Evidence do not apply, including "hearings under Chapters 4, 4A, 5, and 6 of the Mental Health Code, MCL 330.1400 *et seq*.," at which "the court may consider *hearsay data* that are part of the basis for the opinion presented by a testifying mental health expert." MRE 1101(b)(10) (emphasis added). Under MCL 330.1459(2), "[t]he court shall receive all relevant, competent, and material evidence which may be offered. The rules of evidence in civil actions are applicable, *except* to the extent that specific exceptions have been provided for in this chapter or elsewhere by statute or court rule." (Emphasis added.)

At respondent's mental-health hearing, Dr. Blake confirmed that he examined respondent, but the examination was "a bit brief" because respondent "got quite frustrated," so he "review[ed] her medical record thoroughly and [he] also spoke to staff at the hospital." Dr. Blake testified that

> the record reflects the following . . . she's unemployed. She lives at home with her family [and] also a four-year-old son that [respondent] has who's got some special needs. Anyway, my understanding is that basically she's been overwhelmed. You could say stressed out. There was a physical altercation at the house. A door had been broken. And [respondent] at this point, based on how she was with me, I'm presuming was—was this way with her family and it would be nearly impossible to live with her in the state of mind that she is—is currently in. She is unstable and I do think she can be a danger to both herself and others. The record reflects that she had made comments about, uh, wanting her—her family dead. Wanting to die herself. And, uh, also wanting to take herself and her son—again, special needs son—to a shelter which seems quite unreasonable and un—unsafe for—for both of them.

The trial court concluded it was "satisfied based on clear and convincing evidence" that respondent was a "person requiring treatment," as defined by MCL 330.1401(1)(a) and (c).

We believe that the trial court did not commit plain error. Dr. Blake "personally examined" respondent before the mental-health hearing, thereby meeting the standards in MCL 330.1461(1). Dr. Blake's examination was "a bit brief," but MCL 330.1461(1) does not prescribe the length of an examination, and Dr. Blake testified that the examination was "brief" because respondent was "quite frustrated." Also, Dr. Blake relied upon statements from respondent's father that Dr. Blake reviewed, which constituted "hearsay data" admissible under MRE 1101(b)(10).[3]

Dr. Blake's testimony clearly and convincingly established that respondent was a "person requiring treatment" under MCL 330.1401(1)(a) and (c). Dr. Blake left no doubt that respondent did not understand her need for treatment and that respondent was frustrated during their interview. See MCL 330.1401(1)(c). Dr. Blake's testimony about respondent's statements that she wanted herself and her family dead and about the breaking of a door at home presented "a substantial risk of significant physical or mental harm to the individual or others," *id*., and a reasonable expectation that respondent would, within the near future, "intentionally or unintentionally seriously physically injure . . . herself, or another individual[.]" MCL 330.1401(1)(a). Therefore, because Dr. Blake's testimony was permissible, the trial court did not plainly err by relying on that testimony to find, by clear and convincing evidence, that respondent was a "person requiring treatment."

Respondent insists that her father's statements, reported by Dr. Blake during his testimony and in the clinical certificates, were biased and unsubstantiated. But special deference is given to the trial court's findings "when they are based on the credibility of the witnesses." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). The trial court found that the testimony of Dr. Blake, which relied in part on statements from respondent's father, established by clear and

---

[3] The term "hearsay data" refers to "documents not personally prepared by [the witness]." *Kovacs v Chesapeake & Ohio R Co*, 134 Mich App 514, 541; 351 NW2d 581 (1984).

convincing evidence that respondent was a person requiring treatment under MCL 330.1401(1)(a) and (c). We must "defer to the trial court on issues of credibility." *Moote v Moote*, 329 Mich App 474, 481; 942 NW2d 660 (2019). The fact that Dr. Blake's testimony and the clinical certificates were based partially on statements of respondent's father does not warrant rejection of Dr. Blake's testimony and conclusions.

Respondent also faults the trial court for failing to ensure that the report on alternatives to hospitalization included an assessment independent from the clinical record and court documents. Under the Mental Health Code, a court "shall order a report assessing the current availability and appropriateness for the individual of alternatives to hospitalization, including alternatives available following an initial period of court-ordered hospitalization." MCL 330.1453a. After reviewing this report, the trial court must:

> (a) Determine whether a treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization is adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future.

> (b) Determine whether there is an agency or mental health professional available to supervise the individual's treatment program.

> (c) Inquire as to the individual's desires regarding alternatives to hospitalization. [MCL 330.1469a(1)(a) through (c).]

If the trial court locates a treatment program that is an alternative to hospitalization and is adequate to meet the treatment needs of the respondent, "the court shall issue an order for assisted outpatient treatment or combined hospitalization and assisted outpatient treatment . . . ." MCL 330.1469a(2).

Here, the trial court ordered the report on alternative mental-health treatment to be provided before respondent's mental-health hearing. A social worker who was a "hospital and court liaison" reported that no other alternative treatment resources were appropriate for respondent. The social worker recommended hospitalization for 60 days, followed by assisted outpatient treatment. The social worker noted that her recommendation was based on her "[r]eview of the clinical record and court documentation." Respondent contends that the social worker who completed the report was required to conduct an independent assessment and to speak to respondent independently, but that contention is not supported by any authority, and MCL 330.1453a does not require the report to include an independent mental-health evaluation. The record reflects that the trial court complied with the statutory requirements of MCL 330.1453a by ordering the report before the mental-health hearing. Accordingly, we have no basis to grant any relief to respondent.

## D. RIGHT TO JURY TRIAL

Respondent claims that the trial court erred by ending the mental-health hearing without considering that, before the hearing, respondent told the social worker and her attorney she wanted to have a jury trial. This Court reviews "for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App at 381. "A probate court abuses its discretion when it chooses an outcome

-8-

outside the range of reasonable and principled outcomes." *In re Tchakarova*, 328 Mich App at 182 (quotation marks and citation omitted).

The Michigan Constitution states that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." Const 1963, art 1, § 14. Similarly, the Mental Health Code provides that "[t]he subject of a petition may demand that the question of whether he requires treatment or is legally incompetent be heard by a jury." MCL 330.1458. The trial court must give the respondent "notice of the right to demand a jury trial." MCL 330.1452(2). Under MCR 5.740(B), "[a]n individual may demand a jury trial any time before testimony is received at the hearing for which the jury is sought."[4]

Here, after all of the testimony was presented and the trial court had concluded the mental-health hearing, counsel for respondent's parents asked if respondent consented to her parents being temporary guardians of her son. Respondent then asked for a jury trial, which the trial court denied, stating that it was "too late" because testimony had already been received. Respondent stated that she had told her attorney and the social worker the day before that she wanted a jury trial, but trial counsel denied that allegation and "move[d] to strike the testimony and set it over for a jury trial" because "[t]here has obviously been a conflict here of interest between my client—she's making claims that I, uh, am not aware of . . . ." Petitioner's counsel responded that "testimony has been taken and the Court has ruled on this matter[,]" so it would be inappropriate "to strike everything and retry the case." The trial court agreed, explaining that "that is what I'm going to do. I'm going to stick with my prior ruling."

Respondent's argument is premised on the contention that MCL 330.1458, which provides respondents in mental-health proceedings with a right to a jury trial, does not identify a time limit for requesting a trial by jury. But the Michigan Constitution states that the right to a jury trial is automatically waived in all civil cases unless one of the parties demands a jury trial "in the manner prescribed by law." Const 1963, art 1, § 14. The "manner prescribed by law" is defined by MCR 5.740(B), which provides that a respondent may demand a jury trial at any time *before* testimony is received at the mental-health hearing. Although MCL 330.1458 does not prescribe a time limit for requesting a trial by jury, "[i]n instances in which a statute and a specific court rule conflict, the court rule prevails" on "all matters of practice and procedure in the courts of this state." *In re Contempt of Henry*, 282 Mich App 656, 667; 765 NW2d 44 (2009). Thus, because MCR 5.740(B) prevails over MCL 330.1458, and respondent requested a trial by jury after testimony was received at the mental-health hearing, the trial court did not abuse its discretion when it denied respondent a jury trial. See *In re Tchakarova*, 328 Mich App at 182; *In re Portus*, 325 Mich App at 381.

Respondent insists that if she failed to timely assert her right to a jury trial, she was denied effective assistance of counsel because trial counsel failed to request a jury trial before testimony was received. "[D]ue process requires that an individual subject to a petition in a civil commitment proceeding has a right to the effective assistance of counsel." *In re Londowski*, 340 Mich App at 515. Whether respondent's attorney acted ineffectively " 'is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law.' " *Id.* at 516. If no evidentiary hearing took place in the trial court to create

---

[4] Pursuant to MCR 5.151, the language of MCR 5.740 applies to mental-health proceedings.

a record on the claim of ineffective assistance of counsel, then appellate review is limited to errors apparent on the record. *Id.* In addition, respondent bears the burden of establishing that counsel's performance was deficient under an objective standard of reasonableness and that counsel's errors were so serious as to deprive respondent of a fair hearing whose result is reliable. *Id.*

When respondent first raised the issue of a jury trial after the trial court had given its ruling at the mental-health hearing, respondent's attorney seemed more startled than anyone else in court. Counsel stated that "I was told by the social worker that she met with my client and withdrew that request yesterday." Counsel continued: "I've been on . . . three or four phone calls yesterday with either the hospital, Amber, the social worker, or my client." Counsel concluded: "So, that's why that was not requested, Your Honor. That she did not want it. That's what I was told by Amber." Respondent then tried to question the social worker, who refused to answer because she "was not sworn in as a witness." Respondent insisted she had "requested a jury trial from the start," but that prompted her attorney to respond: "I am unaware of that, Your Honor." Regaining his bearings, counsel "move[d] to strike the testimony and set it over for trial[,]" noting "[t]here has obviously been a conflict here of interest between my client [who]'s making claims that I, uh, am not aware of . . . ." Counsel explained that he "was only following the directions that were indicated to me by the social worker who had just spoke[n] with my client and then called me on my request."

Under these circumstances, we cannot conclude that counsel's performance was deficient. Both respondent and her attorney were aware of her right to a jury trial. The notice that was served on respondent two days before the hearing informed her in plain terms that she had a right to a jury trial. Counsel, by his own estimation, was involved in "three or four phone calls" with respondent, her social worker, and the hospital on the eve of trial, and those calls led him to conclude that there was no interest in a jury trial. Moreover, respondent did not say a word about a jury trial until the hearing had effectively ended and the discussion had turned to a minor guardianship for her child. Thus, respondent has failed to carry her burden of establishing that her counsel was deficient when he did not ask for a jury trial at the outset of the mental-health hearing on December 6, 2023. She is not entitled to any relief on her claim of ineffective assistance of counsel.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani