*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CL.

CATHERINE DOWNES,

UNPUBLICATION
March 12, 2025
1:38 PM

Petitioner-Appellee,

v

No. 371810
Washtenaw Probate Court
LC No. 24-000536-MI

CL,

Respondent-Appellant.

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

In this civil-commitment proceeding under the Mental Health Code, MCL 330.1001 *et seq.*, respondent appeals as of right the probate court's order for involuntary mental health treatment, under MCL 330.1468(2). We affirm.

## I. FACTS

This case arises out of respondent's engagement with mental health treatment. Respondent is not from the United States, but she moved to Ann Arbor, Michigan, in order to attend school. Respondent's mental health began to decline, potentially triggered by school-related stressors. On June 30, 2024, respondent was hospitalized at Forest View Psychiatric Hospital and served with a petition for mental health treatment. The petition alleged that respondent had a mental illness and was a "person requiring treatment" under MCL 330.1401(1)(c). The petition was supported by two clinical certificates, including a report authored by respondent's psychiatrist, Dr. Muhannad Kassawat.

On July 3, 2024, respondent and her counsel requested to defer the hearing on the petition because respondent agreed to participate in a combined hospitalization and outpatient treatment program. Shortly thereafter, Catherine Downes, a Court Liaison for Forest View and the named petitioner, filed a demand for a hearing, stating that respondent had orally demanded one. After a hearing on the demand was held, the court denied the petition on the merits, not finding clear and

convincing evidence in support of hospitalization at that time. Notably, the court did not dismiss the case.

On July 15, 2024, petitioner filed a second demand for a hearing, stating that respondent had orally demanded a hearing and that she had refused to accept her prescribed treatment. After a hearing on the second demand was held, the court found by clear and convincing evidence that respondent was a person requiring treatment due to her mental illness, therefore satisfying the conditions of MCL 330.1401(1)(a) and (c). The court further found that Forest View could provide adequate and appropriate treatment for respondent's condition, and ordered respondent to combined hospitalization and assisted outpatient treatment no longer than 180 days, and for hospitalization for up to 60 days of the treatment period, with an initial hospitalization period of up to 30 days. The order also outlined respondent's treatment requirements, which included medication, noting that respondent's "medication may need to be adjusted or changed, and the dosages adjusted, but that [was] between her and the providers." Respondent now appeals.

## II. INVOLUNTARY MENTAL HEALTH TREATMENT

On appeal, respondent appears to argue that the probate court erred by: (1) holding the second-demand hearing because the petition had already been dismissed, and there was no evidence that respondent requested a hearing or refused to accept treatment; and (2) ordering involuntary mental health treatment for respondent, despite her experiencing severe negative side effects from her medication. We disagree.

As a preliminary matter, respondent has devoted approximately two paragraphs to her arguments on appeal. She does not include any caselaw or statutory provisions. Accordingly, "[r]espondent has failed to coherently present and discuss any perceived error." See, e.g., *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014). "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *Id.* (alterations, and citation omitted). Nevertheless, we address respondent's arguments for completeness.

## A. PRESERVATION STANDARD OF REVIEW

"In order to properly preserve an issue for appeal, a party must raise objections at a time when the trial court has an opportunity to correct the error . . . ." *In re Jestila*, 345 Mich App 353, 355 n 3; 5 NW3d 362 (2023) (quotation marks, alteration, and citation omitted). Although respondent contends that this issue was not preserved, we disagree. At the second-demand hearing, respondent made a procedural objection, arguing that petitioner erroneously filed a second demand for a hearing instead of filing a new petition. Respondent also argued that she should not be subject to involuntary mental health treatment on the merits because she "ha[d] reasons why she didn't take [her] medication . . . ." Therefore, this issue is preserved for appellate review. See *id*.

We review de novo issues of statutory interpretation. *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 2. A probate court's dispositional rulings are reviewed for an abuse of discretion, but the factual findings underlying a probate court's decision are reviewed for clear error. *Id*. "An abuse of discretion occurs when the probate court

chooses an outcome outside the range of reasonable and principled outcomes," and "[t]he probate court necessarily abuses its discretion when it makes an error of law." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citations omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted).

## B. PROCEDURAL ARGUMENT

"Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness . . . generally are referred to as civil commitment proceedings." *In re Londowski*, 340 Mich App 495, 503; 986 NW2d 659 (2022) (quotation marks and citation omitted). These proceedings are governed by Chapter 4 of the Mental Health Code, MCL 330.1400 *et seq*.

First, respondent appears to argue that the probate court erred by holding the second-demand hearing because the petition had already been dismissed at the first-demand hearing. But, as previously stated, the probate court's order following the first-demand hearing indicated that the petition was "denied on the merits," not "dismissed." At the second-demand hearing, the probate court explained that it believed it was appropriate for the case to proceed because respondent deferred the hearing, and the court denied the first demand for a hearing on the merits of whether respondent was suitable for hospitalization, as opposed to denying the petition itself. Accordingly, respondent's deferral was not extinguished by the order denying the demand for a hearing.

Respondent further argues that "[t]he day after the Initial Demand for hearing had been filed by the Hospital[,] the second Demand for hearing was filed stating [respondent] refuses to accept prescribed treatment and [respondent] orally demanded a hearing. However, there was no testimony provided in support of that statement." We disagree that the probate court procedurally erred by holding the second-demand hearing.

First, we question respondent's recitation of the procedural history regarding the demands because the record reflects that the first demand for a hearing was filed on July 8, 2024, and the second demand for a hearing was filed on July 15, 2024. Therefore, several days separated the filing of the first and second demands. Further, respondent's contention that there was "no testimony provided in support" of her refusing to accept her prescribed treatment is incorrect because respondent and Dr. Kassawat both testified that she refused to take her medication.

Respondent cites no law for the contention that an individual's oral demand for a hearing must be documented by testimony, nor is this notion supported by the applicable provisions of the Mental Health Code. At the time that the second demand for a hearing was filed, respondent had already deferred the hearing on the initial petition, a practice that is authorized under MCL 330.1455(6) (providing that the subject of a petition may file a request to temporarily defer the hearing upon agreeing to follow a proposed plan of treatment). MCL 330.1455(8) provides as follows:

Upon receipt of a copy of the request to temporarily defer the hearing under [MCL 330.1455(6)], if the individual has agreed to remain hospitalized, the hospital director shall treat the individual as a formal voluntary patient without requiring the individual to sign formal voluntary admission forms. *If the individual, at any time during the period in which the hearing is being deferred, refuses the prescribed treatment or requests a hearing, either in writing or orally, treatment shall cease, the hospitalized individual shall remain hospitalized with the status of the subject of a petition under [MCL 330.1434], and the court shall be notified to convene a hearing under [MCL 330.1452(1)(d)].* [Emphasis added.]

Further, MCL 330.1452(1)(d) directs the probate court to promptly convene a hearing not more than seven days after its receipt of "[a] demand or notification that a hearing that has been temporarily deferred under [MCL 330.1455(6)] be convened."

Respondent does not cite any support for the notion that it was erroneous for petitioner to initiate the demand for hearing, rather than respondent herself. MCL 330.1452(1)(d) and MCL 330.1455(8) do not explicitly limit which party must notify the court that a hearing should be convened, and MCL 330.1455(8) explicitly states that a demand for hearing may be filed "[i]f the individual, at any time during the period in which the hearing is being deferred, *refuses the prescribed treatment* or requests a hearing . . . ." (Emphasis added.) As previously noted, the record reflects that respondent refused her prescribed treatment during the deferral period. Therefore, the probate court did not abuse its discretion by holding a second-demand hearing.

## C. MEDICATION ARGUMENT

Respondent also argues that the probate court erred by ordering involuntary mental health treatment, including medication, when respondent was experiencing adverse side effects. We disagree.

This Court has summarized important provisions and definitions applicable to civil-commitment proceedings as follows:

"Involuntary mental health treatment" means "court-ordered hospitalization, assisted outpatient treatment, or combined hospitalization and assisted outpatient treatment as described in [MCL 330.1468]." MCL 330.1400(f). The probate court may order such treatment for an individual if that individual is found to be a "person requiring treatment." MCL 330.1468(2). "A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465. [*In re Londowski*, 340 Mich App at 504-505].

Accordingly, in order to properly order respondent to involuntary mental health treatment, the probate court had to find, by clear and convincing evidence, that respondent was a "person requiring treatment" under the Mental Health Code. "Evidence is clear and convincing when it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *MAT*, ___ Mich App at ___; slip op at 6 (quotation marks and citation

-4-

omitted). MCL 330.1401(1) defines the term, "person requiring treatment," including the following:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

> \* \* \*

> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

In this case, the probate court found that respondent satisfied the definition of "person requiring treatment" under MCL 330.1401(1)(a), reasoning that respondent could "reasonably be expected within the near future to intentionally or unintentionally seriously injure herself or others" because she had been stalking her former boyfriend and "engaged in acts or made significant threats substantially supportive of this expectation." This determination was supported by the record.

At the hearing, Dr. Kassawat testified that respondent was an individual with a mental illness, specifically, "bipolar disorder, manic with psychotic features," which is a mood disorder. Dr. Kassawat explained that, based on her mental illness, respondent was unable to make good decisions at that time. During the first few days of her hospitalization, respondent was "very focused" on attempting to call and communicate with her former boyfriend, who had a restraining order against her for stalking. Dr. Kassawat believed that respondent's behaviors posed a substantial risk of intentional or unintentional physical injury to respondent or her former boyfriend "because she might put herself in a situation where he would find himself having to defend himself or being attacked . . . ."

Accordingly, the probate court properly determined that there was clear and convincing evidence that respondent was a "person requiring treatment" under MCL 330.1401(1)(a), therefore allowing the court to order involuntary mental health treatment under MCL 330.1468(2).

In addition to respondent satisfying the definition of a "person requiring treatment" under MCL 330.1401(1)(a), the court also found that respondent satisfied the definition under MCL 330.1401(1)(c). This determination was also supported by the record.

Dr. Kassawat further testified that, as a result of respondent's mental illness, she was "a person whose judgment [was] so impaired that she [did] not understand the need for treatment . . . ." Respondent fluctuated daily on whether she believed herself to have a mental illness. She had the same varying beliefs when it came to taking her medication. Respondent's

impaired judgment and lack of understanding regarding the need for treatment was also demonstrated through her own testimony. When asked if she believed she was bipolar, she stated, "It depends on the view." She also denied feeling manic, instead claiming that she was "just being anxious" and needed to be discharged. Respondent also demonstrated an unwillingness to voluntarily participate in or adhere to necessary treatment.

On appeal, respondent primarily challenges the court's order on the basis that she was experiencing severe negative side effects from her prescribed medication. Although she claimed that the medication gave her seizures, Dr. Kassawat did not believe this was true. Neither Dr. Kassawat, nor hospital staff, ever witnessed respondent in a seizure state. Further, her prescription was a seizure medication, therefore making it highly unlikely that she was experiencing her claimed side effects. Rather, Dr. Kassawat believed that respondent was delusional and not in the right state of mind. To the extent that respondent challenges the credibility of this competing testimony, we must "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Portus*, 325 Mich App at 397 (quotation marks and citations omitted).

Further, Dr. Kassawat testified that he intended to switch respondent's medication to a long-acting injectable. Petitioner also acknowledged that respondent's treatment would include "work[ing] with Dr. Kassawat to figure out the appropriate medications and levels so that she feels comfortable and confident that it controls her mental illness and doesn't have all negative side effects." The probate court likewise acknowledged "that the medication may need to be adjusted or changed, and the dosages adjusted, but that is between [respondent] and the providers." This flexibility regarding respondent's medication cuts against the argument that "the Hospital insisted that she take what the hospital dictated."

Accordingly, the probate court properly determined that there was clear and convincing evidence that respondent was a "person requiring treatment" under MCL 330.1401(1)(c), therefore serving as another basis for justifying the court's order under MCL 330.1468(2).

Finally, it was proper for the court order to require medication as part of respondent's treatment plan. This Court has recognized that "MCL 330.1469a requires that a preponderance of the evidence support the probate court's findings with respect to its determinations regarding an individual's treatment and placement." *In re Portus*, 325 Mich App at 393. Here, Dr. Kassawat testified that he noticed minor improvement when respondent took her medications, estimating that if she continued taking medication, her hospitalization should take no more than a week or 10 days. Dr. Kassawat further testified that medication was an adequate and appropriate way to treat respondent's mental illness, as well as the least restrictive means to treat her. Accordingly, the probate court did not clearly err by requiring medication as part of respondent's treatment.

Affirmed.

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

-6-